Kerry **WALKER**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 579S120

Supreme Court of Indiana.

Sept. 25, 1980

Sharon Carroll Clark, Gregg & Clark, Anderson, for appellant.

Theodore L. Sendak Atty. Gen., Jeffrey K. Baldwin, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Kerry Walker was tried and found guilty of murder by a jury on June 3, 1978. He was sentenced to forty (40) years imprisonment. He appeals.

Appellant presents several issues for our review. They concern (1) the granting of the State's motion to amend its indictment; (2) the denial of appellant's motion to dismiss and the admission of exhibits; (3) the discovery of appellant's attorney's hand-written notes; (4) the overruling of appellant's motion in limine; (5) the sufficiency of the evidence of the victim's death from injuries inflicted rather than from physician negligence; and (6) the sufficiency of the evidence that appellant committed the acts causing the injuries.

The evidence reveals that on October 31, 1977, the appellant, Kerry Walker, was an inmate serving time at the Indiana Reformatory at Pendleton, Madison County, Indiana. At the same time and place, James L. Webster and Delbert McBaine were also inmates at the reformatory. McBaine testified that he had known the appellant for approximately nine months. They had sex together at the reformatory and McBaine was the appellant's "kid" or girl, although they swapped off on many occasions. McBaine testified that appellant Walker had a "possessing intent" and that Walker argued with other inmates to leave McBaine alone.

McBaine had only seen Webster on three occasions, the first being the Friday before Webster was killed. Webster wanted McBaine to come up to his cell to have sex. McBaine testified that Webster told him and Walker to come to his cell and that if they did not they were to bring out their "shanks," or knives. They did not go to Webster's cell. McBaine said he and Walker discussed Webster and that Walker talked about killing Webster. McBaine said Webster followed him to his cell and that he immediately went in and shut the door because he was afraid of Webster. After these incidents the appellant got a knife from Thomas Fuller. McBaine and Walker continued to discuss killing Webster. On Monday morning, October 31, 1977,

McBaine and appellant got out of their cells and went up to Webster's cell to talk to him. Webster started yelling and the appellant took the knife out and stabbed Webster. Appellant and McBaine went down a back stairs to the cafeteria. They ate, returned to their cells and on the way returned the knife to Fuller.

Dr. Choi was called to treat Webster. He was conscious, alert, and his blood pressure was good. Dr. Choi testified that there was a loss of blood and ordered Webster transported to Wishard Hospital in Indianapolis. Dr. James Phillip Campbell, chief resident in surgery, treated Webster at Wishard. Dr. Campbell testified that he saw two external wounds and that Webster was in stable condition. He observed Webster over a period of one and one-half hours. Webster continued to bleed internally. Dr. Campbell determined that surgery would be necessary. Surgery was commenced. During surgery, Webster suffered cardiac arrest three times. He died about noon on October 31, 1977. Dr. Campbell testified that the cause of death was cardiac arrest caused by loss of blood. Dr. Benz, an Indianapolis pathologist, testified that the cause of death was two stab wounds to the left chest, and he agreed with Dr. Campbell that there was loss of blood and then cardiac arrest.

## I.

Appellant alleges that the trial court erred in allowing amendment of the indictment. On May 22, 1978, the State filed its motion to amend the indictment whereby the decedent's place of death was changed from Madison County to Marion County. The defendant objected to this motion on May 24, 1978. Hearing was had on the motion to amend and it was granted. Ind. Code § 35-3.1-1-5 (Burns 1979) permits the amendment of an indictment to correct any defect as long as the amendment does not prejudice the substantial rights of a defendant. *Highsaw v. State*, (1978) Ind., 381 N.E.2d 470. The appellant claims that because of this amendment Dr. Benz and Dr. Campbell were permitted to testify and

that this limited the appellant in preparing his defense and prejudiced him. We find no merit to this claim.

Ind. Code § 35-3.1-1-5(d) (Burns 1979) provides as follows:

"Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any adjournment or postponement of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense."

The record does not reveal any request for a postponement by the defendant and there is no showing that he was prejudiced by this amendment. There was no error in the allowing of this amendment.

## II.

Appellant next claims that the court erred in denying his motion to dismiss and in the admission of certain exhibits. Appellant's motion was filed in the alternative requesting that if the court refused to dismiss the cause that an order be entered prohibiting the State from using certain exhibits and evidence in the direct presentation of its case. Repeated demand had been made on the prosecutor's office for items which included photographs, laboratory reports, the alleged weapon and certain letters or notes. When, four days before trial, the defendant had not been permitted to examine the State's exhibits, the motion to dismiss was filed.

The motion to dismiss included a statement that the defendant did not wish a continuance of the matter and that a continuance would constitute a waiver of his right to a speedy trial. The court denied the motion to dismiss, and ordered that notes or letters allegedly written by the defendant would not be admitted for the purposes of direct evidence in the cause. The State claimed that it did not have these

items at the time the discovery was requested. It appears from the record that on one day the items were available and defendant's counsel and the State could not agree on a time at which they would be available. It is not clear which photographs or laboratory reports defendant's motion attempted to prohibit.

At trial State's Exhibits # 1 and # 2, photographs of the victim were admitted. An autopsy report, State's Exhibit # 5, was admitted and State's Exhibits # 3, a jacket, and # 4, a knife, were admitted. Defendant also objected to the admission of State's Exhibit # 9, inmate Fuller's grand jury testimony, which was admitted. Letters allegedly written by the appellant, Walker, to Delbert McBaine, were not admitted into evidence. The judge sustained defense counsel's objection to their use.

■ State's Exhibit # 1, a photograph of the victim was admitted without objection by the defendant. State's Exhibit # 2, another photograph of the victim was admitted over objection that it was not an accurate portrayal of the victim because of ink marks circling the wounds and because surgical incisions were apparent on the body. The jury heard, and it was fully explained to them that the wounds were circled by Dr. Choi during his testimony. Dr. Campbell testified that he made the incisions apparent in the photograph during surgical treatment. Autopsy photographs that are illustrative of the witness' testimony and tend to prove the cause of death are admissible under general principles that allow the admission of photographs when testimony concerning that which they depict would be proper. *Grooms v. State*, (1978) Ind., 379 N.E.2d 458, 463; *Tinsley v. State*, (1977) 265 Ind. 642, 643–44, 358 N.E.2d 743, 744; *Walker v. State*, (1976) 265 Ind. 8, 12–13, 349 N.E.2d 161, 165.

■ Appellant objects to the admission of State's Exhibits # 3, a jacket, and # 4, a knife, claiming that there was a defective chain of custody for those items. Those items were seized by officers at the prison, were initialed and taken to the locked property room. There was some conflict as to

the times when Officer Appleby delivered them to Officer Leedy and when Leedy returned them to Appleby. The institutional jacket and the knife were taken to the Indiana State Police Laboratory for testing for blood. These exhibits were identified by the officers who seized them and by McBaine and the officers in whose custody they were placed at trial. These exhibits were capable of eyewitness identification and it was a sufficient foundation for their introduction that a witness identified them and they had relevancy to the issues. *Gee v. State*, (1979) Ind., 389 N.E.2d 303, 309. *Woodard v. State*, (1977) 267 Ind. 19, 366 N.E.2d 1160, *Owens v. State*, (1975) 263 Ind. 487, 333 N.E.2d 745. These were not fungible items and there was no contention that these exhibits were tampered with in any way. There was no error in their admission.

■ State's Exhibit # 5, a copy of an autopsy report, was objected to on the basis that it was not the original. There was some confusion on the pick–up or delivery of a copy of this report prior to trial. It was explained that the original was filed with the Marion County Coroner and that this was an authentic copy. The only objection here was that this copy was not the best evidence. A recess was taken so that counsel could examine this record and extensive cross–examination was had on it. Appellant stated that he did not want a continuance of this matter, and therefore foreclosed that alternative as a possible remedy for any alleged prejudice to him for violation of the discovery order. We see no error in the admission of this item or in the violation of the discovery order that prejudiced this appellant. There is no error on this issue. *See Stanley v. State*, (1980) Ind., 401 N.E.2d 689, 692; *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218, 223; *Cochran v. State*, (1978) Ind., 378 N.E.2d 868, 870.

■ Appellant also objected to the introduction of inmate Fuller's grand jury testimony, State's Exhibit # 9. At trial the objection raised was relevancy and authenticity. The objection argued here is that

there was an improper foundation laid for impeachment. Appellant cites *Anderson v. State*, (1977) Ind., 370 N.E.2d 318 for his claim that a proper foundation must be laid by bringing to the witness' attention the circumstances under which the contradictory statements were made. The State did this, and the witness identified his statements made to the Grand Jury and authenticated that the exhibit was a transcript of his statements. In addition, the exhibit was under seal. There is no error on this issue.

### III.

Appellant next claims that the trial court erred in requiring appellant's counsel to turn over hand–written notes pursuant to discovery. The State's discovery motion was filed on May 22, argument was had on May 25, 1978, and the court granted the motion. Paragraph 3 of this motion states that:

> "That defense counsel be compelled to furnish the State with the names and last known addresses of persons he intends to call as witnesses together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements and any record of prior conviction known to him."

Defendant filed his response on May 26, 1978. It is not evident that there was any objection to this requirement. There was a hearing on this discovery issue and the appellant was ordered to give any memorandum of any oral statements of witnesses to the prosecutor. At that time defense counsel stated that there were some notes taken on two potential witnesses. Neither witness testified at trial. In *State ex rel Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d 433, at 436, an identical discovery paragraph was considered, and it was held that ordering such discovery was within the trial court's discretion. *Keller, supra*. There is no error on this issue.

### IV.

Appellant next alleges that the court erred in overruling his Motion in Limine. This motion was directed to the exclusion of references to conversations had with the decedent after the stabbing incident, and prior to his death. The motion attempted to restrict references to any conversations since any such references would require the appellant to object at the time of trial. Appellant claims that such objections would be highly prejudicial to him. It seems that all parties agreed that the content of such conversations were hearsay and inadmissible. Appellant objected to statements made regarding such conversations and his objections were sustained. No conversations were admitted. Witness Officer Hollingsworth identified Webster in State's Exhibit # 1 and was present in the ambulance with him going to Wishard Hospital. He testified that he had four or five conversations with him while Webster was in the emergency room. Defense counsel objected to the conversation being admitted on the basis of hearsay and this objection was sustained. Witness Sergeant Richards testified and also identified State's Exhibit # 1 as a photograph of Webster. He accompanied the victim to the ambulance and testified that he had asked him if he knew who stabbed him. Richards stated that the ambulance left and that subsequently he took the appellant and another suspect into custody. It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of evidence. *Lagenour v. State*, (1978) Ind., 376 N.E.2d 475. The primary issue here is whether the evidence admitted was inadmissible. No conversations were admitted and there is no error on this issue.

### V.

Appellant next claims that there was insufficient evidence that the victim died as a result of the injuries inflicted rather than as the result of physician–surgeon negligence. In brief, his claim is based on the fact that the victim was first seen at Wishard Hospital at Indianapolis at approximately 6:30 a. m. Dr. Campbell testified that at that time Webster was reasonably stable, his blood pressure and pulse rate

were acceptable. He observed Webster for approximately two and one–half hours in the emergency room at the hospital. Biotic intravenous fluids and blood were administered to stabilize the patient. It was later determined that surgery would be necessary to stop the bleeding. During surgery Webster suffered cardiac arrest. After direct heart massage and the administration of drugs he was revived and his condition stabilized. Again cardiac arrest occurred and Webster was resuscitated and his heart began to function. While the surgical team was closing the chest opening, Webster suffered a third cardiac arrest. Attempts to revive him were futile. He was pronounced dead about one–half hour after his last cardiac arrest. Dr. Campbell testified that death was caused by cardiac arrest based on massive blood loss. Dr. James A. Benz performed the autopsy. He testified that Webster died as a result of stab wounds to the chest. There was no genuine conflict in this testimony as Dr. Benz explained the difference in the use of words in his testimony and in Dr. Campbell's testimony as follows: "The primary cause of death is the stab wounds. The mechanism of the final demise was as a result of the stab wounds. There was blood loss and the heart stopped beating. Clinical physicians very frequently confuse mechanism of death with cause of death and they state on death certificates mechanisms rather than causes. However his statement in essence is the same as I'm saying except the primary thing that initiated this individual demise was stab wounds." Appellant's argument is basically that had surgery been performed sooner, there would not have been such great blood loss, and therefore, the heart would not have stopped beating, therefore death would not have occurred. There is no factual basis for this claim. Walker was given immediate medical attention at the prison, transferred to the hospital and received attention there. There was testimony that surgery was not usually required in cases such as this. When surgery was required, there was no showing of negligence in the performance of the surgery or in the treatment of the cardiac arrest.

■ In considering the sufficiency of evidence of the cause of death, the testimony of the two physicians and the other witnesses is sufficient for the jury to have found that Webster's death was caused by stab wounds inflicted by appellant. *Morris v. State*, (1977) 266 Ind. 473, 364 N.E.2d 132; *Bivins v. State*, (1972) 254 Ind. 184, 258 N.E.2d 644.

## VI.

Appellant next alleges that the evidence was insufficient to prove that he committed the acts which resulted in Webster's death. In reviewing sufficiency of the evidence claims this court will neither weigh the evidence nor judge the credibility of the witnesses. We look to the evidence most favorable to the State to determine if there is substantial evidence of probative value to support the jury's verdict. *Taggart v. State*, (1979) Ind., 390 N.E.2d 657; *Pollard v. State*, (1979) Ind., 388 N.E.2d 496.

■ Appellant claims that Delbert McBaine could have stabbed the victim and that McBaine's credibility was doubtful since McBaine had the opportunity to commit the murder, and because Fuller testified that McBaine returned the murder weapon to him and had blood on his hand and on his coat. Inmate Delbert McBaine identified the appellant as the perpetrator of the crime. He testified that he and the appellant discussed the stabbing. Inmate Swinehart testified that he had had conversations with the appellant as to why Walker had killed the victim and that the appellant had said he saw his opportunity to stab Webster and had done so. The appellant is asking this court to judge the credibility of witnesses and this we will not do.

■ Appellant is also claiming that McBaine could have committed the acts here and that without McBaine's testimony there is no evidence against appellant. It is well established that the testimony of a single eyewitness can be sufficient to sustain a conviction. *Hill v. State*, (1979) Ind., 394 N.E.2d 132; *Lewis v. State*, (1976) 264

Ind. 288, 342 N.E.2d 859; *Frith v. State,* (1975) 263 Ind. 100, 325 N.E.2d 186. As was noted in *Roseberry v. State,* (1980) Ind., 402 N.E.2d 1248 *citing Martin v. State,* (1972) 258 Ind. 83, 279 N.E.2d 189, an accomplice is a competent witness and a person may be convicted on the uncorroborated testimony of an accomplice. There was sufficient evidence presented to support the jury's finding of guilt beyond a reasonable doubt.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.