**Robert L. HICKS, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 02S00–8703–CR–342.

Supreme Court of Indiana.

Oct. 11, 1989.

As Corrected Oct. 16, 1989.

Howard S. Grimm, Jr., John S. Nimmo, Grimm, Haecker & Nimmo, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PER CURIAM.

A jury trial resulted in appellant's conviction of Murder, for which he received a sentence of sixty (60) years; Felony Murder, for which he received no sentence; Robbery, a Class A felony, for which he

received a sentence of twenty (20) years; Burglary, a Class A felony, for which he received a sentence of twenty (20) years, which is to run concurrently with his sentence for the Robbery conviction but consecutively with the sentence for his Murder conviction; Dealing in a Sawed–Off Shotgun, a Class D Felony, for which he received a sentence of four (4) years to run consecutively with his other sentences; Resisting Law Enforcement, a Class A misdemeanor, for which he received a sentence of one (1) year, to run consecutively with his other sentences, for a total executed sentence of eighty-five (85) years.

On January 3, 1986, Julie Bissell did not show up for work. Her co-workers attempted to call her but her line was continually busy. A co-worker drove to her house and noticed that a window in the garage door had been broken and the door from the garage into the house was off its hinges. He went to a neighbor's home and called the police.

When police arrived, they found the telephone off the hook and Julie was not there. Police found blood spots throughout the home and on the bed. They released a missing person dispatch, giving a description of Julie and her car.

Officer Sauter saw three persons riding in a vehicle matching the description of Julie's car. A high-speed chase ensued until the car came to a stop. Two men, one of whom was appellant, and a woman jumped from the car and ran. Officer Sauter chased appellant on foot and tackled him. He found two shotgun shells in appellant's pocket.

Darrell Wilson testified that he was appellant's friend. He stated that on the evening of January 2, 1986 appellant called him and asked him if he wanted to drive around and drink beer. At a bar, they met Lamar Russell. Wilson asked Russell whether he still had the shotgun Wilson had given him. Russell agreed to give them the shotgun.

Appellant and Wilson agreed to break into a house. Appellant broke the garage door window, and Wilson helped him climb through it. They removed the door to the house from its hinges and entered the kitchen where appellant took the telephone off the hook. Wilson found a diamond ring on the kitchen table and put it in his pocket. When they opened the door to the bedroom, Julie Bissell was coming out, and appellant knocked her to the floor. Assuming she was unconscious, they searched the room for valuables. While Wilson was looking in the closet he heard a noise and turned around. Julie was standing up and he saw appellant pulling a knife out of her stomach. Appellant then forced her to write a check to Lamar Russell. Appellant then got garbage bags from the kitchen. They put one bag over her feet and one over her head and wrapped string around her feet and waist.

They found the keys to her car and placed her in the back of it. Appellant took Wilson to appellant's car and told him to follow him. Appellant drove to a bridge. He told Wilson to get his knife out of Julie's car and throw it off the bridge. Appellant then bludgeoned Julie in the head several times with the butt of the shotgun.

Later Wilson was driving the car around town with appellant and Annette Swann, a friend, when they were stopped by police. At that time, appellant was captured, but Wilson escaped to his grandparents' house. Police found inside the car a sawed-off shotgun and the check made out to Lamar Russell which appellant had forced Bissell to write.

Later that day Wilson's father took him to the police station where he was advised of his rights. He accepted a plea agreement in which he pled guilty to felony murder in exchange for his testimony about all the circumstances surrounding Julie Bissell's death.

The Allen County Coroner testified that Julie died from complications arising from the stab wound to her stomach, but the five or six blows to her head would have been sufficient themselves to cause her death.

■ Appellant argues that none of his convictions is supported by the evidence. He asserts that Wilson's testimony cannot

be believed because the testimony of other witnesses contradicted his story, and he cites the following examples: evidence surfaced that Wilson told others that he planned to rob a rich lady; he reserved airline tickets to Los Angeles; witnesses' testimony was contradictory as to whether a shotgun was exchanged between Russell and him; Wilson lied about Julie writing a check because she had been stabbed, but the check had no blood on it; a witness who saw Julie's car at the bridge stated that only one car was there at the time; and it was Wilson, and not appellant, who actually exercised control of Julie's property after the murder. Appellant concludes Wilson's testimony is suspect and he implies that it was Wilson, and not himself, who was the principal actor in the crimes.

This Court will not reweigh the evidence nor judge the credibility of the witnesses. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068. The jury was apprised of the conflicts in the testimony and weighed the witnesses' credibility accordingly.

Additionally, if appellant had not been the principal actor in the crimes, the acts of his accomplice can be imputed to him because they acted in concert in the furtherance of the crimes. *Ford v. State* (1988), Ind., 521 N.E.2d 1309. We find the evidence is sufficient to sustain appellant's convictions.

■ Appellant argues the trial court erroneously allowed Joey King to testify because the State had concealed King's statement that appellant admitted his presence at the crime scene. This concealment, he claims, deprived him of a fair trial.

Before trial, the trial court granted appellant's motion to produce witness names but denied it as to witness statements and statement summaries. This ruling was consistent with the trial court's granting to appellant a protective order preventing the State from discovering appellant's witness statements and statement summaries, which appellant claimed were attorney work product. Appellant filed a motion for expedited disclosure of evidence which sought any State's evidence that incrimi-

nated appellant in the murder. The trial court denied the motion.

Defense counsel heard about King's statement and deposed him before he testified. At trial, a hearing was held prior to King's testimony in which appellant objected to its admission on the ground that the State had concealed King's statement which incriminated appellant. The trial court overruled appellant's objection and allowed King to testify. After King's direct examination, a recess was taken to allow defense counsel to review King's testimony. Upon the reconvening of trial, King was cross-examined.

■ The State argues that King's statement was not subject to discovery because it was attorney work product. We disagree. The general principles to be applied by a trial court in determining whether to grant discovery to a criminal defendant are found in *Bernard v. State* (1967), 248 Ind. 688, 230 N.E.2d 536. Recognizing the importance of reciprocity and balancing between parties, this Court extended discovery privileges to the State in *State ex rel. Keller v. Criminal Court of Marion Co.* (1974), 262 Ind. 420, 317 N.E.2d 433. Trial court discretion rather than the rules of civil procedure governs discovery in criminal matters. *Spears v. State* (1980), 272 Ind. 647, 403 N.E.2d 828.

■ With respect to statements of witnesses taken in advance of trial, a criminal defendant may obtain such witness statements after they testify for possible use in cross-examination. *Antrobus v. State* (1970), 253 Ind. 420, 254 N.E.2d 873. A trial court may also require pre-trial production of witness statements. *Dillard v. State* (1971), 257 Ind. 282, 274 N.E.2d 387. In *Spears* this Court stated that witness statements taken on behalf of a criminal defendant in anticipation of litigation should not be subject to pre-trial discovery by the prosecution over a timely work-product objection. In contrast, a trial court order requiring defense counsel to furnish the State with written and recorded statements of intended witnesses was upheld in both *Keller* and *Walker v. State* (1980), 274 Ind. 197, 409 N.E.2d 626, but the work-

product exception was not expressly discussed. The work-product exception to criminal discovery has since been reviewed in *State ex rel. Meyers v. Tippecanoe Superior Court* (1982), Ind., 438 N.E.2d 989 (summaries of expected witness testimony with respect to each essential element of each charged offense held protected from defendant's discovery as work product of State); *Partlow v. State* (1983), Ind., 453 N.E.2d 259, *cert. denied* (1984), 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219 (work product doctrine does not apply to shield defendant's abstract of expected witness testimony); *State ex rel. Keaton v. Circuit Court of Rush County* (1985), Ind., 475 N.E.2d 1146 (verbatim copies of police reports held non-discoverable as the State's work product); and *Burns v. State* (1987), Ind., 511 N.E.2d 1052 (work-product exception does not prevent discovery of verbatim statements of witnesses once they have testified at trial). The essential function of the work product exception to discoverability is to protect from disclosure an attorney's "mental impressions, conclusions, opinions, or legal theories." Trial Rule 26(B)(3), Indiana Rules of Procedure.

■ The wisdom of discovery in criminal cases as recognized by Chief Justice Arterburn in *Keller* remains viable today:

> Nevertheless, criminal discovery is designed to improve the efficiency of the criminal justice system. The idea of a trial as a sport or game is not only a reflection on the judicial process, but it is wasteful of human intelligence and technique.

262 Ind. at 423, 317 N.E.2d at 435. Moreover, because of the potential role of verbatim witness statements as items of substantive evidence under the rule of *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, such statements must be viewed as akin to other potential exhibits such as photographs, videotapes, handwriting exemplars, diagrams and other physical evidence the discoverability of which is unquestioned even if prepared by or at the direction of counsel. We therefore hold that the work-product doctrine is not applicable to shield verbatim witness statements from otherwise proper discovery. To the extent it is inconsistent with this opinion, we overrule *Spears*, 272 Ind. 647, 403 N.E.2d 828.

Although the State's work-product argument fails, appellant has not shown reversible error. We do not agree with appellant's claim that the State concealed King's statement. The State was not directed to produce witness statements. On the contrary, the trial court denied both parties' requests for the production of witness statements. The State did not "conceal" the statement. The trial court did not err in admitting King's testimony.

Appellant makes the same argument about the testimony of Tracy Hudson, who testified that the sawed-off shotgun was transferred between Russell and appellant on a downtown street after they left a bar. Wilson previously had testified that the shotgun was transferred in the bar's parking lot. Appellant argues Hudson's version of the shotgun transfer was concealed by the State. As stated in the previous issue, the State was not required to produce this witness statement, and no error was committed.

■ Appellant argues that certain testimony of an expert witness caused reversible error. Jeanice Fair, a chemist employed by the Indiana State Police Laboratory Division, specializes in the comparisons of paint, glass, and fiber specimens. She stated that one of the glass fragments found in appellant's car was of common origin with glass from the victim's broken garage window. The prosecutor asked her if she were to break one hundred windows at random in Allen County, what would be the percentage of matching specimens she would expect. Over appellant's objection, she answered that if one hundred windows were broken, six of the windows would have the properties she mentioned. Appellant argues that Fair's expertise in the area of manufacturing and distribution of glass was not established, and the admission of her testimony based on probabilities was reversible error.

■ The determination of whether a witness is qualified to testify as an expert

is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse of discretion. *Ford*, 521 N.E.2d 1309. In order to qualify an expert, the subject matter must be related to some scientific field beyond the knowledge of the average lay person, and the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness's testimony will aid the trier of fact. No precise quantum of knowledge is required if the witness shows a sufficient acquaintance with the subject. *Fox v. State* (1987), Ind., 506 N.E.2d 1090.

Fair testified that she has a bachelor of science degree in microbiology and a bachelor of science degree in forensic science, in which she had classes in glass analysis and comparisons. She had an internship with the Montana State Crime Lab, and she received specialized training at the Indiana State Police Laboratory and by the F.B.I. regarding forensic glass examination.

Fair's expertise in her field was adequately established at trial. The extent of her knowledge affects the weight of her testimony and not its admissibility. Appellant questioned her about the prevalence of the type of glass in question during cross-examination. We find no abuse of discretion in allowing her testimony. *Rowan v. State* (1982), Ind., 431 N.E.2d 805.

■ In his deposition, Sergeant Gebert stated that he suspected Wilson was involved in the Bissell case before he was stopped by police, and he was a suspect in other burglary cases. Appellant argues the trial court erroneously denied his pretrial motion seeking information concerning the charged and uncharged crimes for which police suspected Wilson was responsible. Appellant contends the information was necessary to establish Wilson's motive and intent to commit the instant crimes. He cites *Maiden v. State* (1985), Ind., 477 N.E.2d 275, to support his position.

■ The holding in *Maiden* does not apply to appellant's case. In that case, we held that evidence of the accused's prior bad acts or uncharged crimes is generally inadmissible as proof of his guilt but may be admissible to show intent, motive, purpose, identity, or common scheme or plan. Appellant implies that the evidence should have been admitted to show that Wilson was the main or only perpetrator in the killing of Julie Bissell. However, Wilson had accepted a plea bargain and was not a defendant but was a witness for the State. The effect of introducing suspicions of Wilson's prior bad acts would have been to impeach him. Evidence of specific acts of misconduct not reduced to a conviction is not admissible for impeachment purposes. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085. We find no error in the denial of appellant's motion.

■ Appellant argues his motion to dismiss the information should have been granted because the affidavit of probable cause was not sufficient to justify his arrest.

The lack of probable cause is not a proper ground on which to predicate a motion to dismiss the information. The probable cause affidavit relates to the pre-trial detention of a defendant, not the charging instrument. *Gilliam v. State* (1978), 270 Ind. 71, 383 N.E.2d 297; *State v. King* (1987), Ind.App., 502 N.E.2d 1366. Accordingly, the trial judge properly denied appellant's motion to dismiss the information predicated on the absence of probable cause.

■ The record indicates that appellant was adjudged to be guilty of both murder and felony murder but was sentenced only on the murder count. Because only one homicide occurred, he cannot be convicted of both murder and felony murder. *Sandlin v. State* (1984), Ind., 461 N.E.2d 1116.

Appellant's conviction of felony murder must be vacated. In all other respects, the trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., concurs in result with opinion in which PIVARNIK, J., concurs.

GIVAN, Justice, concurring in result.

I am compelled to write a concurring in result opinion in this case because I perceive the majority has misconceived the long-standing rules of discovery procedure as applied to criminal cases.

For a thorough understanding of the principles involved in this most important application of the rules of discovery, I would refer the reader to 2 *Wiltrout, Indiana Practice* § 945(6) (1967). There the author discusses the rule and the exceptions thereto, citing as authority the case of *Hickman v. Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 for the proposition that work products of counsel are not generally discoverable.

The *Hickman* case specifically mentions statements taken of potential witnesses as being included within the work-product exception to discoverability. During the 1960s, when Indiana was contemplating the adoption of the Federal Rules of Civil Procedure, the matter was referred to a Civil Code Study Commission. After extensive study and much research, the Commission prepared a volume entitled, *Indiana Rules of Civil Procedure Proposed Final Draft,* which was submitted to the Bar, to the Legislature, and to the Supreme Court for study and possible implementation. In that draft, starting at page 123, there is an extensive explanation of Rule 26, entitled "General Provisions Governing Discovery." Here we find no debate that work products are not generally discoverable. However, the text informs us of the various exceptions to that rule and again in the comments cites us to many cases including *Hickman, supra.*

Equipped with this scholarly study, the Legislature first enacted the rules as a statute. This was accomplished through cooperation between the Legislature and the Supreme Court with the understanding of both that the rules contained several statements of substantive law which did not come within the province of the Supreme Court to adopt. After passage by the Legislature, the rules then were submitted to the Supreme Court which, with minor changes to some of the obviously procedural matters, adopted them. Rule 26 was adopted without change.

Following this adoption, we find many cases, most of which are cited by the majority in their opinion, implementing and explaining Rule 26 as applied to criminal cases. The general holding has been that unless there is a criminal rule directly opposed to the civil rules, the civil rules also will apply in criminal cases. However, as to Rule 26, this Court has held in the cases cited by the majority, that as far as criminal cases are concerned, the trial court has a wider latitude in permitting discovery than generally is accepted in civil cases.

In most of the cases cited by the majority, this Court upheld the trial court's discretion whether to order the production of statements which ordinarily would be considered as work product. In some of those cases, it was held that the asking party should be allowed such discovery because they clearly had demonstrated an exception to the general rule, and in order to do justice, the production should be ordered. In other cases, we reversed the trial judge's order to produce where there had been no showing of such necessity, *e.g., State ex rel. Keaton v. Circuit Court of Rush County* (1985), Ind., 475 N.E.2d 1146; *State ex rel. Meyers v. Tippecanoe Superior Court* (1982), Ind., 438 N.E.2d 989. I see no contradiction in any of these cases. Though the results differ, the cases demonstrate a clear understanding of the rule and its exceptions and make consistent application thereof.

In cases such as *Burns v. State* (1987), Ind., 511 N.E.2d 1052, cited by the majority, we have held that the work-product exception does not preclude discovery of verbatim statements of witnesses once they have testified at trial. Here again, we see a clear articulation of the exceptions and how they are to be applied to the rule. The majority sets out these cases and correctly describes what they hold. However, such observations are by no means authority for the statement in the majority opinion, "We therefore hold that the work-product doctrine is not applicable to shield ver-

batim witness statements from otherwise proper discovery."

In the case at bar, appellant had filed a motion requesting that the State produce the names and addresses of all the persons the State had interviewed plus written and oral statements, excluding memoranda reporting or summarizing their statements. The trial court granted appellant's motion as to a list of names of all witnesses to be used by the State, but the motion otherwise was denied. There is no showing in this record that an exception to the general work-product rule existed requiring the disclosure of material such as statements of witnesses.

The majority opinion patently ignores the well-founded principle that an exception must be demonstrated to the trial court before any work-product material may be discovered. When such a showing is made, conceivably a trial judge could abuse his discretion by refusing to allow such discovery. When, however, as in the case at bar, there has been no such showing and the trial judge exercised his discretion in refusing to order disclosure of work product, his ruling should be sustained. Though the majority eventually has reached the correct result in this case, I am concerned that they have muddied the water on this issue and have made a clearly erroneous statement leading members of the bench and bar to believe that work-product statements taken of prospective witnesses are discoverable under all circumstances regardless of need.

I would hold that the trial court's denial of appellant's broad discovery request was not error.

PIVARNIK, J., concurs.