**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT KLINGLESMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1303-CR-116 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Sr. Judge
Cause No. 49G06-1112-FA-87832

**October 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Defendant Robert Klinglesmith began inappropriately touching his step-granddaughter, M.C., when she was eight or nine years old. On the first occasion, M.C. was riding with Klinglesmith in a pick-up truck when Klinglesmith pulled M.C. over toward him and placed his hands in her pants. Klinglesmith placed one of the fingers on his right hand in M.C.'s vagina. Klinglesmith again placed one of the fingers on his right hand in M.C.'s vagina approximately three or four years later. Each of these events happened when M.C. was younger than fourteen. During the summer of 2011, when M.C. was seventeen years old, Klinglesmith again inappropriately touched M.C. M.C. awoke one morning to Klinglesmith attempting to place a finger on his right hand into her vagina. Klinglesmith continued to attempt to place his finger in M.C.'s vagina until M.C. removed his hand from her pants.

On December 16, 2011, the State charged Klinglesmith with two counts of Class A felony child molesting and two counts of Class B felony attempted criminal deviate conduct. Following a two-day trial, Klinglesmith was found guilty as charged. On appeal, Klinglesmith contends that the cumulative effect of the erroneous admission of certain evidence subjected him to fundamental error. Klinglesmith also contends that his two convictions for Class B felony attempted criminal deviate conduct violate the prohibitions against double jeopardy. Concluding that the cumulative effect of the allegedly erroneous admission of certain evidence did not subject Klinglesmith to fundamental error, but that Klinglesmith's two Class B felony attempted criminal deviate conduct convictions violate the

2

prohibitions against double jeopardy, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

M.C. was born on October 3, 1993. M.C. had a difficult upbringing and resided, at times, with her grandmother and her step-grandfather, Klinglesmith. M.C. loved her grandmother but did not have a good relationship with Klinglesmith.

### I. First Incident

At some point during the summer, when M.C. was eight or nine years old, M.C. was instructed by her grandmother to ride with Klinglesmith while he took M.C.'s uncle to a friend's home. M.C. moved over to the seat near the window after Klinglesmith dropped her uncle off at his friend's home. Klinglesmith, however, pulled M.C. toward him, and while driving with his left hand, placed his right hand in M.C.'s shorts. Klinglesmith eventually placed one of the fingers on his right hand in M.C.'s vagina.

M.C. knew that Klinglesmith's finger was inside her vagina because she felt Klinglesmith's fingernail, which was deformed, scratch her. When M.C. attempted to get away, Klinglesmith told her, "it'll be ok, we're almost home." AV Rec. 2:24:55 - 2:28:37 pm 2/4/2013. M.C. mentioned the incident to her older sister but did not report the incident to her mother or grandmother.

### II. Second Incident

Approximately three or four years later, M.C. and her sister were forced to reside with their grandmother and Klinglesmith because their mother was having problems. While residing with their grandmother and Klinglesmith, M.C. and her sister slept on couches in the

3

living room of the home. Almost every night, after M.C.'s sister was sleeping, Klinglesmith would come in and sit on the couch on which M.C. slept. While sitting on the couch, Klinglesmith would rub M.C.'s "leg," "belly," "butt," and "chest." AV Rec. 2:28:59 - 2:34:04 pm 2/4/2013.

Some nights, Klinglesmith would put his hand inside M.C.'s pants. On at least one of these nights, Klinglesmith inserted his finger into M.C.'s vagina. M.C. knew that Klinglesmith's finger was inside her vagina because she again felt his deformed fingernail, which was "smashed and curved." AV Rec. 2:31:53 pm 2/4/2013. Klinglesmith removed his finger after M.C. twice requested that he do so. Soon thereafter, M.C. again told her sister about Klinglesmith's actions.

Eventually, M.C.'s mother and grandmother found out about the incident. M.C.'s mother confronted Klinglesmith, who denied touching M.C. in an inappropriate manner. Neither M.C.'s mother nor grandmother notified authorities of the incident.

### III. Summer of 2011

During the summer of 2011, when M.C. was seventeen years old, M.C. experienced problems with her mother. As a result of these problems, M.C.'s mother sent her to stay with her grandmother and Klinglesmith. M.C.'s mother sent M.C. to her grandmother's home because there "wasn't anywhere else" for her to go. AV Rec. 3:16:08 pm 2/4/2013.

While residing with her grandmother and Klinglesmith, M.C. attempted to keep her distance from Klinglesmith. Klinglesmith, however, made this difficult. M.C. initially slept on a bed in the basement. One night soon after M.C. arrived at her grandmother's home,

4

M.C. awoke to find Klinglesmith rubbing her back. M.C. immediately notified her mother, who told her that she "had to stick it out." AV Rec. 2:35:54 pm 2/4/2013. M.C. also told her grandmother.

Eventually, M.C. began sleeping on a "pallet" of blankets on the living room floor because of spiders that were present in the basement. AV Rec. 2:36:38 pm 2/4/2013. Klinglesmith would come into the living room while M.C. was sleeping to drink his coffee and watch television. On some occasions, M.C. felt Klinglesmith rubbing her legs. When M.C. felt Klinglesmith rubbing her legs, she would kick and tell him to stop. Klinglesmith would often reply with, something to the effect of, "Uhh, ok, I'll wait til later." AV Rec. 2:38:23 pm 2/4/2013. M.C. again reported Klinglesmith's actions to her grandmother.

One morning M.C. awoke when she felt Klinglesmith attempting to put his finger in her vagina. M.C. knew that Klinglesmith was attempting to do so because she felt his deformed fingernail. M.C. kicked and screamed for Klinglesmith to stop. He did not immediately do so. Klinglesmith continued to attempt to put his finger in M.C.'s vagina, leaving his finger where it was for a time. M.C. then forcibly removed Klinglesmith's hand from her pants.

At some point, Klinglesmith also handed M.C. a note which asked if she "could show him what [she] looked like in her panties." AV Rec. 2:43:05 pm 2/4/2013. M.C. took the note to her grandmother. M.C.'s grandmother tore up the note and placed it in the top drawer of her dresser. Her grandmother did not call the police or request that Klinglesmith leave the home.

5

M.C. reported Klinglesmith's actions to her mother. M.C.'s mother observed that M.C. was upset. M.C. and her mother then reported the incidents to police.

On June 27, 2011, Christopher Lawrence, a child abuse detective with the Indianapolis Metropolitan Police Department ("IMPD"), was assigned to investigate the claims made by M.C. During the course of his investigation, Detective Lawrence interviewed M.C., M.C.'s mother, M.C.'s grandmother, and Klinglesmith, as well as other family members. Detective Lawrence also obtained permission to take a picture of Klinglesmith's hand, including his deformed fingernail.

Klinglesmith gave conflicting statements during his interview with Detective Lawrence. These conflicting statements included inconsistent statements about whether he had ever touched M.C. and whether he and M.C. got along. Klinglesmith initially indicated that he had not touched M.C. but subsequently stated that he had touched her shoulders to wake her up and to get the cats off her, and that he had tried to help her get a "kink" out of her shoulders. AV Rec. 4:33:08 pm 2/4/2013. Klinglesmith described M.C. as a tease, complaining that she would wear short shorts and would twitch her leg and wink at him. Klinglesmith also admitted that he was attracted to M.C. and stated that "it would be nice to have something like that" lying beside you when you go to bed to do sexual things with. AV Rec. 4:33:23 – 4:33:32 pm 2/4/2013.

Detective Lawrence also requested and was granted a search warrant to search the home shared by M.C.'s grandmother and Klinglesmith. During his search of the home, Detective Lawrence located a torn note in the top dresser drawer in M.C.'s grandmother's

bedroom which read, something to the effect of, "show me what you look like in your panties in the morning." AV Rec. 4:21:55 pm 2/4/2013. This note was subsequently determined to have been written by Klinglesmith, and identified as the note given to M.C. by Klinglesmith.

## IV. Criminal Proceedings

On December 16, 2011, the State charged Klinglesmith with two counts of Class A felony child molesting and two counts of Class B felony attempted criminal deviate conduct. A two-day jury trial was conducted on February 4 and 5, 2013, after which the jury found Klinglesmith guilty as charged. On February 20, 2013, the trial court sentenced Klinglesmith to forty years of incarceration, with fifteen years suspended for each Class A felony conviction and ten years for each Class B felony conviction. The trial court ordered that the sentences be run concurrently for an aggregate sentence of forty years with fifteen years suspended.

## DISCUSSION AND DECISION

## I. Admission of Evidence

Klinglesmith contends that the trial court abused its discretion in admitting certain evidence at trial. Specifically, Klinglesmith argues that the trial court abused its discretion in admitting allegedly impermissible character evidence, allegedly impermissible hearsay evidence, and allegedly impermissible evidence about the course of Detective Lawrence's investigation.

> We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. However, the

improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Hernandez v. State*, 785 N.E.2d 294, 300 (Ind. Ct. App. 2003), *trans. denied*.

*Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004). "To determine that the error did not contribute to the verdict, we determine whether the error was unimportant in relation to everything else the jury considered on the issue in question." *Meadows v. State*, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003).

## A. Character Evidence

Indiana Evidence Rule 404(a) provides, in relevant part, that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Klinglesmith argues that the trial court abused its discretion in admitting impermissible character evidence. Specifically, Klinglesmith claims that the trial court abused its discretion in admitting M.C.'s testimony that she had never had a good relationship with Klinglesmith because "he didn't seem like a good person." AV Rec. 2:23:44 pm 2/4/2013.

We note that Klinglesmith did not object to M.C.'s statement during trial. Therefore, his claim of error is waived. *See Cole v. State*, 970 N.E.2d 779, 782 (Ind. Ct. App. 2012). However,

> [o]ne way to escape such waiver is by claiming the error is fundamental. *Jewell v. State*, 887 N.E.2d 939, 940 n.1 (Ind. 2008). Fundamental errors are "clearly blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied." *Warriner v. State*, 435 N.E.2d 562, 563 (Ind. 1982). The fundamental error exception is "extremely narrow." *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002).

8

*Id*. To qualify as fundamental error, "'an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.'" *Brown v. State*, 799 N.E.2d 1064, 1067 (Ind. 2003) (quoting *Mitchell v. State*, 726 N.E.2d 1228, 1236 (Ind. 2000)).

Again, during her trial testimony, M.C. stated that she had never had a good relationship with Klinglesmith because "he didn't seem like a good person." AV Rec. 2:23:44 pm 2/4/2013. M.C. explained that she felt this because of the way he talked to people, the way he acted, and because her gut told her he was not a good person. The challenged statement was vague and was made in reaction to a question about the nature of M.C.'s relationship with Klinglesmith. The statement does not refer to any particular character trait. Due to the vague nature of this statement, one could not reasonably interpret the statement as an invitation for the jury to infer that Klinglesmith was guilty of the charged conduct. As such, we are unable to say that the statements were made for the purpose of proving that Klinglesmith acted in conformity with any particular character trait.[1]

M.C. presented unchallenged testimony regarding each of the incidents of alleged sexual abuse. M.C. also presented unchallenged testimony relating to the note given to her by Klinglesmith. This note was subsequently determined to have been written by Klinglesmith. In light of M.C.'s unchallenged testimony regarding the alleged abuse, we

---

[1] Moreover, to the extent that M.C. later made a comment indicating that she had previously heard Klinglesmith make sexual slurs, this comment was part of M.C.'s answer to a question raised by defense counsel on cross-examination. As such, any error from this statement would amount to invited error and could not form the basis of a finding of fundamental error. *See Cole*, 970 N.E.2d at 783 (providing that an alleged error constituted an invited error because the response was elicited by a question by defense counsel and, as a result, could not be fundamental error).

cannot say that it was error, much less fundamental error, for the trial court to admit a vague statement by M.C. regarding the nature of her relationship with Klinglesmith.

## B. Hearsay Evidence

> Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." Evid. R. 801(c). Hearsay is not admissible unless it fits within an exception to the hearsay rule. *Simmons v. State*, 760 N.E.2d 1154, 1160 (Ind. Ct. App. 2002).

*Cole*, 970 N.E.2d at 782. "A 'declarant' is a person who makes a statement." Evid. R. 801(b).

Klinglesmith argues that the trial court abused its discretion in admitting impermissible hearsay at trial. Specifically, Klinglesmith argues that M.C.'s statement that she told her sister about the second incident, who told M.C.'s aunt, who then told M.C.'s mother constituted impermissible hearsay. Notably, however, the challenged statement was not admitted into evidence because Klinglesmith objected to this statement at trial and his objection was sustained. *See Walker v. State*, 274 Ind. 197, 204, 409 N.E.2d 626, 630 (1980) (providing that no inadmissible evidence was admitted when defense counsel objected to the allegedly inadmissible evidence and counsel's objection was sustained).

In addition, during its reading of the preliminary instructions to the jury, the trial court instructed the jury as follows:

> During the trial, the court may rule that certain questions may not be answered and/or that certain exhibits may not be allowed into evidence. You must not concern yourselves with the reasons for the rulings. The Court's rulings are strictly controlled by law.
> Occasionally, the Court may strike evidence from the record after you have already seen or heard it. You must not consider such evidence in making

10

your decision.

Your verdict should be based only on the evidence admitted and the instructions on the law. Nothing that I saw or do is intended to recommend what facts or what verdict you should find.

Appellant's App. p. 79. On appeal, we presume that the jury followed the instructions given by the trial court. *Travelers Indem. Co. of America v. Jarrells*, 927 N.E.2d 374, 378 (Ind. 2010).

Furthermore, to the extent that Klinglesmith claims that M.C.'s statement that she told her sister about Klinglesmith's actions constituted impermissible hearsay, we disagree. A statement is not hearsay if:

> (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition; or (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose; or (C) one of identification of a person made shortly after perceiving the person[.]

Evid. R. 801(d) (emphasis in original).

During trial, M.C. testified that she told her sister about Klinglesmith's actions. M.C. did not testify about the exact words she said to her sister but only that she told her sister about Klinglesmith's actions. M.C.'s statement was not introduced to prove the truth of matter asserted, *i.e.* that Klinglesmith had penetrated her vagina with his finger, but rather to show that M.C. attempted to report the abuse she suffered at the hands of Klinglesmith to another shortly after the abuse occurred. This testimony was relevant to rebut the implied

11

assertion by the defense that M.C. fabricated her testimony relating to Klinglesmith's actions, and did not constitute impermissible hearsay.

## C. Course of Investigation

> Course-of-investigation evidence is often offered to explain why police officers, investigators, or other law enforcement officers proceeded in a particular manner. "This 'background' information, however, generally is irrelevant and should be excluded." 1 Wharton's Criminal Evidence § 4:47 (15th ed. 1997). It is irrelevant if it does not make it more or less probable that the defendant committed the acts alleged. "In other words, the explanation for why the police did what they did may add nothing to the determination of the defendant's guilt or innocence." *Id.* While jurors may be curious about why investigators acted, an explanation of their actions may have no probative value. *Id.* (citation omitted).

*Kindred v. State*, 973 N.E.2d 1245, 1252-53 (Ind. Ct. App. 2012), *trans. denied*.

In *Kindred*, the individual who investigated a victim's allegations of sexual abuse testified about her role in making charging decisions. *Id.* at 1253. The investigator testified that she does not file charges automatically after receiving a report that someone has been sexually abused, but generally requires some kind of corroboration. *Id.* Upon review, we concluded that the investigator's testimony that she generally requires corroborating evidence before filing charges was irrelevant as it did not make it more or less probable that the defendant committed the acts alleged by the victim. *Id.* We also concluded that the challenged testimony carried the threat that the jurors would infer that some form of corroborating evidence was present in the case at hand because the investigator required corroborating evidence in the form of DNA, other medical evidence, or a confession before filing charges. *Id.*

12

Here, like in *Kindred*, Detective Lawrence testified that not every case of reported child molestation results in criminal charges being filed. Detective Lawrence also testified that cases are assigned to detectives either following IMPD receiving a police report or a tip on the child abuse hotline, and that this case was assigned to him after IMPD received a police report that was filed by M.C. and her mother. Detective Lawrence further testified that after completing his investigation, he spoke to the Marion County Prosecutor's Office which decided to file charges against Klinglesmith. Kinglesmith did not object to any of this testimony at trial.

We agree with Klinglesmith that it was error to admit the above-stated evidence relating to the course of Detective Lawrence's investigation because it was irrelevant. However, Klinglesmith has waived his challenge to the admission of this evidence by not objecting to its admission at trial, may only escape such waiver by claiming fundamental error. *See Cole*, 970 N.E.2d at 782.

Klinglesmith cannot show that he was subjected to fundamental error or that his substantial rights were violated merely because Detective Lawrence testified that not every report results in criminal charges and that this case was assigned to him after M.C. and her mother filed a police report. Detective Lawrence went on to testify about the evidence that he collected during the course of his investigation, including the note Klinglesmith wrote and gave to M.C., a picture of Klinglesmith's deformed fingernail, and statements made to Detective Lawrence by Klinglesmith. In light of this evidence, when coupled with M.C.'s unchallenged testimony regarding Klinglesmith's actions, we cannot say that any error in

admitting Detective Lawrence's testimony regarding how cases are assigned to detectives by IMPD and that not all allegations of molestation result in criminal charges being filed amounted to fundamental error or was so prejudicial so as to make a fair trial impossible.

### D. Cumulative Effect

Klinglesmith acknowledges on appeal that the individual effect of the admission of the challenged evidence does not constitute fundamental error or require a reversal. Instead, Klinglesmith argues that the cumulative effect of said erroneous admission of the evidence is such that potential for harm cannot be denied. We disagree. Again, contrary to Klinglesmith's claim, the trial court did not admit inadmissible character evidence or hearsay at trial. Further, while we concluded that it was error for the trial court to admit Detective Lawrence's testimony regarding how cases are assigned to detectives by IMPD and that not all allegations of molestation result in criminal charges being filed, such erroneous admission of evidence did not result in fundamental error.

Again, M.C.'s unchallenged testimony set forth the actions taken by Klinglesmith. On at least three separate occasions dating back to when M.C. was eight or nine years old, Klinglesmith attempted to or did stick his finger into M.C.'s vagina. M.C. knew that Klinglesmith had penetrated her vagina because she could feel Klinglesmith's deformed fingernail. M.C.'s testimony regarding Klinglesmith's actions was consistent. M.C.'s testimony regarding the note given to her by Klinglesmith was corroborated by the admission of the note into evidence. The jury weighed M.C.'s testimony and found M.C. to be credible. We will not disturb the jury's determination on appeal.

14

Moreover, to the extent that Klinglesmith argues that the evidence presented at trial, including Detective Lawrence's testimony, amounted to a "drumbeat repetition" of M.C.'s testimony and constituted an improper vouching of M.C.'s truthfulness, we disagree. Evidence Rule 704(B) provides that a witness may not testify about whether another witness has testified truthfully. However, the mere fact that Detective Lawrence testified that after completing his investigation, he spoke to members of the Marion County Prosecutor's Office who subsequently decided to file charges against Klinglesmith did not "vouch" for the truthfulness of M.C.'s testimony. In addition, Detective Lawrence's testimony did not offer a "drumbeat repetition" of M.C.'s testimony regarding her allegations against Klinglesmith. Detective Lawrence did not testify in detail about his interview with M.C. He merely testified about the individuals he interviewed, the physical evidence recovered from Klinglesmith's home, and his interview with Klinglesmith. In addition, no other witness testified to the details of M.C.'s allegations against Klinglesmith.

Klinglesmith has failed to demonstrate that the cumulative effect of the admission of the challenged evidence made it impossible for him to receive a fair trial. As such, we conclude that Klinglesmith has failed to demonstrate that he was subjected to fundamental error that would warrant reversal of Klinglesmith's convictions. Accordingly, we affirm the trial court in this regard.

## II. Double Jeopardy Concerns

Klinglesmith also contends that his two convictions for Class B felony attempted sexual deviate conduct violate the Double Jeopardy Clause, Article I, Section 14 of the

Indiana Constitution. In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), *holding modified by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013),[2] the Indiana Supreme Court concluded that "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." The Indiana Supreme Court explained that "two offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* (emphases in original); *see also Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002).

Convictions may violate the Indiana Double Jeopardy Clause under the statutory elements test or the actual evidence test. Under the actual evidence test, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." *Richardson*, 717 N.E.2d at 53. "To show that two challenged offenses constitute the 'same offense' in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* The existence of a reasonable possibility turns on a practical assessment of whether the fact-finder may have latched on to exactly the same facts for both convictions. *Garrett*, 992 N.E.2d at 720. "Application of the

_____

[2] This modification does not affect the portion of *Richardson* relied on by this memorandum decision.

16

actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination." *Spivey*, 761 N.E.2d at 832.

In *Richardson*, the evidence presented at trial established that on August 31, 1996, many people were at a lake area consuming alcohol and using drugs. 717 N.E.2d at 54. The defendant noticed that one of those present, Jeff Koenig, appeared to possess a considerable amount of money. *Id*. The defendant, along with Koenig and two other men, got into an automobile apparently to drive to another party. *Id*. The automobile stopped on a bridge, and the men exited the vehicle, ostensibly to relieve themselves. *Id*. When Koenig exited the vehicle, he was hit from behind with a beer bottle and knocked to the ground. *Id*. The three men repeatedly kicked and beat him. *Id*. Two of the men then held Koenig down while the third took Koenig's billfold from his pocket. *Id*. After his billfold was removed, Koenig was pushed over the side of the bridge. *Id*. The men left Koenig and returned to the party, bragging about what they had just done. *Id*. Upon review, the Indiana Supreme Court found that from the evidence presented, the defendant demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of battery. *Id*. The Indiana Supreme Court held that application of the actual evidence test thus disclosed that convicting and sentencing the defendant on both of these offenses violated the Indiana Double Jeopardy Clause. *Id*.

In the instant matter, our review of the record leads us to the conclusion that there is a

17

reasonable possibility that the same evidentiary facts were used by the jury to establish the essential elements for both of Klinglesmith's convictions for Class B felony attempted criminal deviate conduct. The evidence relating to these convictions indicates that one morning M.C. awoke when she felt Klinglesmith attempting to put his finger in her vagina, that she knew that Klinglesmith was attempting to do so because she felt his deformed fingernail, and that she kicked and screamed for Klinglesmith to stop. The evidence further demonstrates that Klinglesmith did not immediately stop, but continued to attempt to put his finger in M.C.'s vagina until M.C. forcibly removed his hand from her pants. M.C. testified that this was the only occasion that Klinglesmith attempted to put his finger in her vagina during the summer of 2011. In addition, during closing arguments, the prosecution acknowledged that both counts of Class B felony attempted criminal deviate conduct arose from the same incident.

The prosecution attempted to differentiate between Klinglesmith's actions before M.C. awoke and after she awoke. However, in light of M.C.'s testimony coupled with the prosecution's acknowledgement that the charges relating to Klinglesmith's conduct during the summer of 2011 related to the same incident, we conclude that Klinglesmith has demonstrated a reasonable possibility that the same evidence in finding Klinglesmith guilty of both counts of Class B felony attempted criminal deviate conduct. Thus, application of the actual evidence test discloses that convicting and sentencing Klinglesmith on both of these

18

offenses violates the Indiana Double Jeopardy Clause.[3]

"When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation." *Richardson*, 717 N.E.2d at 54 (citing *Campbell v. State*, 622 N.E.2d 495, 500 (Ind. 1993)). "If it will not, one of the convictions must be vacated." *Id*. "In the interest of efficient judicial administration, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate." *Id*.

Again, in the instant matter, Klinglesmith was convicted of two counts of Class B felony criminal deviate conduct. Because both convictions cannot stand, we vacate one of Klinglesmith's convictions for Class B felony criminal deviate conduct. We note, however, that because the sentences for Klinglesmith's two Class B felony criminal deviate conduct convictions were ordered to run concurrently to one another, our act of vacating one of the convictions does not affect Klinglesmith's overall sentence.

## CONCLUSION

Having concluded that Klinglesmith did not suffer fundamental error due to the cumulative effect of allegedly erroneously admitted evidence but that one of his two convictions for Class B felony criminal deviate conduct must be vacated due to double

---

[3] Having concluded that Klinglesmith's two Class B felony criminal deviate conduct convictions violate the actual evidence test, we need not determine whether said convictions violate the statutory elements test.

jeopardy concerns, we affirm in part and reverse in part.

The judgment of the trial court is affirmed in part and reversed in part.

BAILEY, J., and MAY, J., concur.