CITY OF MISHAWAKA, Appellant–Defendant,

v.

Marian KVALE, Personal Representative of the Estate of Gordon Barclay, Appellee–Plaintiff.

No. 71A05–0311–CV–591.

Court of Appeals of Indiana.

June 30, 2004.

Edward A. Chapleau, South Bend, IN, Attorney for Appellant.

Ronald D. Foster, Botkin & Hall LLP, South Bend, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant City of Mishawaka ("City") appeals the trial court's grant of summary judgment to Appellee–Plaintiff Marian Kvale, as personal representative of the Estate of Gordon Barclay (the "Estate"). We affirm in part and reverse in part.

### Issues

City raises four issues, which we consolidate and restate as:

I.  Whether the trial court abused its discretion by granting the Estate's motion to strike City's summary judgment response and designation of evidence, which was untimely filed;

II. Whether the trial court erroneously granted summary judgment to the Estate because a genuine issue of material fact exists regarding whether the three mortgages at issue are void, pursuant to Indiana Code Section 29–3–8–5; and

III. Whether the trial court's grant of summary judgment in favor of the Estate was erroneous because, even if the mortgage agreements are void, the Estate is obligated to repay the balance due on the agreements under the equitable doctrine of quantum meruit.

### Facts and Procedural History

The relevant designated facts are undisputed. On November 13, 1996, the probate court appointed First Source Bank

("Bank") to be guardian of the estate of Gordon Barclay ("Barclay"). On December 13, 1999, while under the guardianship, Barclay entered into a real estate mortgage agreement with City in exchange for $8,681.00.[1] In addition, on May 23, 2000, Barclay and City executed two separate mortgage agreements in the amounts of $3,320.00 and $6,680.00. As a result of these three mortgage agreements, Barclay became indebted to City in the aggregate amount of $18,681.00. In exchange, City built a new garage on Barclay's property. At the time that his new garage was constructed, Barclay did not own an automobile and was physically unable to walk from his house to the garage, which was located in the back of his residence.

On January 30, 2003, Barclay died and the Estate was opened on his behalf. Subsequently, Marian Kvale ("Kvale"), as personal representative of the Estate, attempted to sell Barclay's real estate and learned of the three mortgage agreements. Kvale eventually sold the property for an undisclosed amount and the present dispute arose regarding the amount due and owing to City.

On May 22, 2003, the Estate filed a complaint against City, alleging that the mortgage agreements were void because Barclay was a protected person when he executed the agreements. On September 11, 2003, the Estate filed a motion for summary judgment, designating, in pertinent part, the following evidence: (1) the pleadings; (2) Kvale's Affidavit dated September 10, 2003; and (3) City's responses to requests for admissions. Forty days later, on October 21, 2003, City filed its response to the Estate's motion for summary judgment, a cross-motion for summary judgment, and City's designation of

evidence. At the Estate's request, the trial court struck City's response and designated evidence as untimely. After conducting a hearing, the trial court granted the Estate's motion for summary judgment and denied City's cross-motion for summary judgment in favor of the Estate. This appeal by City ensued.

**Discussion and Decision**

*I. Standard of Review*

On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's

---

1. Throughout its Appellee's Brief, the Estate characterizes the transactions between Barclay and City as inducements by City to have Barclay execute the real estate mortgage agreements. However, the designated evidence does not demonstrate, or even suggest, that City improperly "induced" Barclay to enter into the mortgage agreements.

decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

■ In addition, "[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000).

## II. Analysis

### A. Motion to Strike Designated Evidence

■ On appeal, City first argues that the trial court abused its discretion by striking the untimely filing of its response and designation of evidence in opposition to the Estate's motion for summary judgment. Indiana Trial Rule 56(C) provides that: "An adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." In addition, Indiana Trial Rule 6(E) provides that when "the notice or paper is served upon [the adverse party] by mail, three (3) days shall be added to the prescribed period." Here, because the Estate served its motion for summary judgment by mail, on September 10, 2003, City's response was due on or before October 13, 2003. However, the evidence reveals that City did not file its response until October 21, 2003. Accordingly, at the summary judgment hearing, the Estate made an oral motion to strike City's response and designated evidence, which the trial court granted.

■ A trial court has broad discretion in granting or denying a motion to strike. *Coleman v. Charles Court, LLC*, 797 N.E.2d 775, 786 (Ind.Ct.App.2003), *reh'g denied*. The trial court's decision will not be reversed unless prejudicial error is clearly shown. *Id.* In the present case, City contends that "there was no prejudice to [the Estate] because [the Estate] had a chance to reply to [City's] response ... and designated evidence." Appellant's Br. at 18. This argument, which asserts only that the Estate suffered no prejudice from the untimely filing, fails to prove that City suffered prejudicial error as a result of the trial court's grant of the Estate's motion to strike.

Moreover, we note that in *Markley Enterprises, Inc. v. Grover*, 716 N.E.2d 559, 563 (Ind.Ct.App.1999), we encountered a similar procedural issue and determined that the trial court abused its discretion by permitting a late summary judgment filing. There, the plaintiff filed a motion for an extension of time to respond to the defendant's motion for summary judgment approximately sixty days after the defendant had filed the initial motion, which the trial court granted. *Id.* at 562. Subsequently, the plaintiff filed a reply brief as well as the designated evidence in opposition to the motion for summary judgment. *Id.* On appeal, another panel of this court reversed the trial court's ruling and held that:

> [The plaintiff] did not respond to the [defendant's] motion for summary judgment within thirty days. Nor did he request an extension of time or otherwise explain the cause of his delay within thirty days. Contrary to [the plaintiff's] argument, the trial court did not have unlimited discretion to expand the time within which he could file his response to summary judgment. Thus, the trial court erred when it granted [the plaintiff's] motion for extension of time to respond to the [defendant's] motion for summary judgment.

*Id.* at 563. In reaching this conclusion, the *Grover* court observed that "the remedies

provided by [Indiana] Trial Rule 56(F)[²] and .(I)[³] are] not available to a non-moving party who has failed to oppose or respond to the motion within the thirty-day limit established by [Indiana] Trial Rule 56(C)." *Id.*

■ Likewise, here, City. failed to respond to the Estate's motion for summary judgment within thirty days as required by Indiana Trial Rule 56(C). As such, City was bound by Indiana Trial Rule 56(C), which requires that an adverse party respond within thirty days after service of the motion. However, because the Estate served its motion for summary judgment via mail, City had an additional three days to respond. *See* T.R. 6(E). Because City's response and designation of evidence was filed after the thirty-three days had expired, the trial court did not abuse its discretion by striking City's response and designated materials.[⁴] *See, e.g., Coleman,* 797 N.E.2d at 787.

### B. Application of Indiana Code Section 29–3–8–5(b)

■ Second, City argues that the trial court erred by granting summary judgment to the Estate on the Estate's claim that the mortgage agreements at issue are void. At the outset, we observe that the parties do not dispute that Barclay was a "protected person" at the time that he executed the three real estate mortgage agreements. Appellant's App. at 31; *see also* Ind.Code § 29–1–1–3(a)(24) (" 'Protected person' has the meaning set forth in IC 29–3–1–13."); *and* Ind.Code § 29–3–1–13 (defining a "protected person" as "an individual for whom a guardian has been appointed or with respect to whom a protective order has been issued"). Moreover, the evidence is uncontested that Barclay, who was born on February 13, 1932, was approximately sixty-seven years old when he entered into the first mortgage agreement.

Indiana Code Section 29–3–8–5(b) provides that: "Every contract, sale, or conveyance executed by a protected person is void unless the protected person is a minor, in which event the contract, sale, or conveyance is voidable." Because Barclay, an adult, was a protected person at the time that he entered into the real estate mortgage agreements with City, the resulting agreements are void pursuant to Indiana Code Section 29–3–8–5(b). As a consequence, the trial court did not err by granting summary judgment to the Estate.

---

2. Indiana Trial Rule 56(F) provides that: .

   When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

3. Indiana Trial Rule 56(I) provides that: "Alteration of Time. The Court, for cause found, may alter any time limit set forth in this rule."

4. The procedural posture of the present case reveals that, on September 11, 2003, City filed a response to the Estate's motion for summary judgment and its own motion for summary judgment, which were contained in one document or filing. The City also filed its designation of evidence, which was both in response to the Estate's summary judgment motion and in support of City's motion for summary judgment. The trial court struck this designation of evidence as untimely because it was in response to the Estate's motion for summary judgment. A party may not circumvent the deadlines imposed by our trial rules—such as the thirty-day time limit for filing a responsive summary judgment pleading—by filing its own motion for summary judgment, therein incorporating the responsive pleading. However, here, the trial court granted the Estate's motion for summary judgment and found in favor of the Estate on City's motion for summary judgment.

## C. Availability of Equitable Relief

■ Finally, City argues that the trial court's grant of summary judgment to the Estate was erroneous because, even if the mortgage agreements are void, the Estate is obligated to pay the balance due on the agreements to avoid receiving an unjust enrichment.[5] The issue concerning the appropriate remedy, if any, available to third parties that contract with adult protected persons is one of first impression in Indiana.

■ As previously mentioned, Indiana Code Section 29–3–8–5(b) unequivocally provides that *every* contract executed by an adult protected person is void. Generally, "[a] void contract cannot be enforced, no matter what hardship it may work, or how strong the equities may appear." *Hoffman v. Dunn*, 496 N.E.2d 818, 823 (Ind.Ct.App.1986) (quoting *Pipecreek School Tp. v. Hawkins*, 49 Ind.App. 595, 599–600, 97 N.E. 936, 936–37 (1912)). In addition, a contract that is void may not be ratified.[6] *See, e.g., Trook v. Lafayette Bank & Trust Co.*, 581 N.E.2d 941, 944 (Ind.Ct.App.1991) (observing that a void contract cannot be ratified), *trans. denied; cf. In re Green's Guardianship*, 92 Ind. App. 314, 322, 175 N.E. 258, 262, (1931) (holding that a ward may ratify a guardian's unauthorized acts, and such ratification will operate to make the guardian's acts effective).

■ Further, the statutes governing guardianships do not provide a legal remedy to third parties that contract with protected persons; rather, such statutes merely provide relief to third parties, who in good faith, contract with guardians or persons acting under a protective order[7] that improperly exercise their legal powers. *See, e.g.,* Ind.Code §§ 29–3–11–1 to –3. Thus, in the absence of a legal remedy, we must determine whether a third party that contracts with a protected person may recover in equity from the protected person or the estate of the protected person. It is axiomatic that, in order to gain relief

---

**5.** In addressing this final contention, we note that when City answered the Estate's complaint, it asserted, as a defense, that "any recovery by [the Estate] would constitute unjust enrichment." Appellant's App. at 19. Because the equitable theory of unjust enrichment is more appropriately asserted as a claim, as opposed to a defense, we will treat City's defense as a counterclaim. *See* Ind. Trial Rule 8(C) ("If the pleading mistakenly designates a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleading as if there had been a proper designation.").

**6.** In their appellate briefs, both parties rely upon the following undesignated evidence:
(1) the affidavit of Judy Rosheck, a consultant with City, which provides, in relevant part, that "Barclay advised me that [Bank] was handling his financial affairs and that I should contact [Bank] for financial information in furthering his application for assistance," Appellant's App. at 64–65; and
(2) the November 4, 1999 letter from Rosheck to Bank discussing City's Community Development Block Grant Program, as well as Bank's response to such letter.
Because this evidence is not properly designated to the Estate's motion for summary judgment, it is inappropriate for our consideration. *See* T.R. 56(H) ("Appeal–Reversal. No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court."). However, even if we were to consider this undesignated evidence, we observe that such evidence fails to demonstrate that Bank was aware that the Development Block Grant Program issued loans, as opposed to grants, or that Bank acquiesced to the mortgage agreements.

**7.** A person acting under a protected order is not a "protected person," but rather a person appointed by the court in a protective proceeding, pursuant to Indiana Code Section 29–3–4, to act on behalf of the protected person. *See, e.g.,* Ind.Code § 29–3–4–3.

in equity, one must have clean hands. *Briggs v. Clinton County Bank & Trust Co. of Frankfort, Ind.*, 452 N.E.2d 989, 1004 (Ind.Ct.App.1983). For the doctrine of unclean hands to apply, the misconduct must be intentional and the wrong that is ordinarily invoked to defeat a claimant by using the unclean hands doctrine must have an "immediate and necessary relation to the matter before the court." *Wedgewood Comty. Ass'n, Inc. v. Nash*, 781 N.E.2d 1172, 1178 (Ind.Ct.App.2003), *clarified on reh'g on other grounds*, 789 N.E.2d 495 (Ind.Ct.App.2003), *trans. denied.*

Our research has revealed only one case, such as the one at bar, where an adult protected person entered into a contract with an attorney for legal services. *See Wyneken v. Long*, 400 N.E.2d 1147, 1148 (Ind.Ct.App.1980). There, we held that "[a]lthough the law will not enforce an express contract against an incompetent [or protected person], the law will allow a recovery against the incompetent's estate for the reasonable value of necessary services rendered at the request of the incompetent." *Id.* Black's Law Dictionary defines the term "necessaries," in part as "[t]hings that are indispensable to living." BLACK'S LAW DICTIONARY 1052 (7th ed.1999). The word "necessaries" includes:

> whatever is reasonably needed for subsistence, health, comfort, and education, considering the person's age, station in life, and mental condition, but it excludes (1) anything purely ornamental, (2) anything solely for pleasure, (3) what the person is already supplied with, (4) anything that concerns someone's estate or business as opposed to personal needs, and (5) borrowed money.

*Id.*

◼ Here, however, the evidence reveals that Barclay used the money obtained from the three mortgage agreements to have a garage built on his property. The designated evidence further demonstrates that at the time that his new garage was constructed, Barclay did not own an automobile and was physically unable to walk from his house to the garage, which was located in the back of his residence. Because the construction of the garage was not reasonably needed for Barclay's subsistence, health, comfort, and education, it was not necessary.

◼ Nevertheless, we must now determine whether City may recover from the Estate under the equitable doctrine of quantum meruit.[8] To successfully assert a claim for quantum meruit—also referred to as unjust enrichment—the plaintiff must establish that a measurable benefit has been conferred upon the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.[9] *See Turner v. Freed*, 792 N.E.2d 947, 950 (Ind.Ct.App.2003); *see also Bayh v. Sonnenburg*, 573 N.E.2d 398,

---

8. City also asserts a claim of equitable right of subrogation. However, the doctrine of equitable subrogation is only applicable where a party, not acting as a mere volunteer, pays the debt of another that, in good conscience, should have been paid by the one primarily liable. *Osterman v. Baber*, 714 N.E.2d 735, 737 (Ind.Ct.App.1999), *trans. denied.* Although this doctrine is highly favored and is to be given a liberal application, it is inapplicable to the case at bar because the evidence does not demonstrate that City paid a debt for Barclay. Rather, the designated evidence shows that City gave Barclay $18,681.00 in exchange for three mortgages.

9. The theory of quantum meruit—which literally means "as much as he has deserved"—is an equitable remedy to provide restitution for unjust enrichment. BLACK'S LAW DICTIONARY 1255 (7th ed.1999). The phrase "unjust enrichment" is defined as "[t]he retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected." *Id.* at 1536.

408 (Ind.1991), *reh'g denied, cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). In this vein, we note that Indiana courts have applied the doctrine of quantum meruit or unjust enrichment to cases involving void contracts, when the capacity of the contracting parties was not in dispute. *See, e.g., Rance v. Rance,* 587 N.E.2d 150, 152 (Ind.Ct.App.1992) (noting that although a purported marriage is statutorily void and, as a consequence, the trial court was powerless to decree a divorce or alimony award, the trial court could settle the property rights acquired during the "marriage"); *see also City of East Chicago, Ind. v. Broomes,* 468 N.E.2d 231, 233–34 (Ind.Ct.App.1984) (applying the doctrine of quantum meruit to a contract between the city and a contractor, which was null and void and holding that, regardless of whether the contractor acted in good faith, it is only entitled to the reasonable value of labor and material provided pursuant to the void contract), *abrogated on other grounds by State Bd. of Tax Comm'rs v. Town of St. John,* 751 N.E.2d 657 (Ind.2001).

In the present case, the designated evidence reveals that Barclay received the aggregate amount of $18,681.00 from City for the construction of a new garage on his property. The evidence further demonstrates that, approximately three years after receiving the money, Barclay died and the Estate sold his property, including the garage, for an undisclosed amount. This evidence demonstrates that genuine issues of material fact exist regarding whether City conferred a benefit—e.g., an increase in the value of the property or the ability to sell the property—upon the Estate, such that retention of

the benefit without payment would be unjust. Accordingly, the trial court properly denied City's cross-motion for summary judgment. However, the trial court erred by granting summary judgment to the Estate on City's claim of unjust enrichment.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the Estate on the issue of whether the real estate mortgage agreements are void but reverse on the issue of unjust enrichment.[10]

Affirmed in part and reversed in part.

BAKER, J., and FRIEDLANDER, J., concur.

---

10. In its appellee brief, the Estate seeks appellate damages pursuant to Appellate Rule 66(E), which provides that: "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Because City's appeal was neither frivolous nor in bad faith, we deny the Estate's request for damages.