**TRAVELERS INDEMNITY COMPANY OF AMERICA, Appellant–Intervenor,**

v.

**Jerry JARRELLS, Appellee–Plaintiff.**

**No. 29A02–0807–CV–669.**

Court of Appeals of Indiana.

May 21, 2009.

Transfer Granted Aug. 19, 2009.

Robert S. O'Dell, O'Dell & Associates, P.C., Carmel, IN, Attorney for Appellant.

W.F. Conour, Timothy F. Devereux, Conour Law Firm LLC, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The Travelers Indemnity Company of America ("Travelers") appeals the trial court's grant of summary judgment in favor of Jerry Jarrells.

We reverse and remand with instructions.

### ISSUE

Whether the trial court erred in granting summary judgment to Jarrells.

### FACTS

The ensuing facts are undisputed. Travelers issued an insurance policy to LeMaster Steel Erectors, Inc. ("LeMaster"). Under the policy, Travelers provided worker's compensation coverage for LeMaster's employees for injuries sustained within the scope of their employment. On September 3, 2002, Jarrells suffered serious injuries when a wall fell on him at a Hamilton County construction site under the control of general contractor, R.D.J. Custom Homes, Inc. ("R.D.J."). The accident occurred in the scope of Jarrells' employment with LeMaster, and Jarrells submitted worker's compensation claims to Travelers in the approximate amount of $66,135.67, which consisted of disability indemnity payments of $21,025.91, and medical payments of $45,904.76. Travelers paid Jarrells' submitted worker's compensation claims in full.

On December 12, 2002, Jarrells brought a third-party personal injury action against R.D.J. and Armando Delgadillo, the general contractor and subcontractor, respectively, at the construction site. On February 3, 2004, Jarrells' counsel contacted Travelers and requested a copy of Travelers' worker's compensation records with regard to Jarrells. Thereafter, on August 2, 2004, Jarrells' counsel provided Travelers with a copy of the complaint for damages filed against R.D.J. and Delgadillo. On December 6, 2004, August 3, 2005, and August 15, 2005, Travelers notified Jarrells' counsel that Travelers was asserting a statutory lien in the amount of $66,135.67 for the worker's compensation payments (medical bills, temporary total disability and permanent partial disability) that it had made on Jarrells' behalf.

Jarrells' lawsuit against R.D.J. and Delgadillo proceeded to jury trial from August 16–18, 2005. At trial, the parties presented documentary evidence and argued to the jury that Travelers had made Jarrells approximately $66,135.67 in worker's compensation payments on behalf of Jarrells and had asserted a lien in that amount. Before jury deliberations, the trial court gave the following final instruction:

### FINAL INSTRUCTION NO. 23

If you find that Jerry Jarrells is entitled to recover, you shall consider evidence of payment made by some collateral source to compensate Jarrells for damages resulting from the accident in

question. In determining the amount of Jarrells [sic] damages, you must consider the following type of collateral source payments:

Payments for workers [sic] compensation.

In determining the amount received by Jarrells from collateral sources, you may consider any amount Jarrells is required to repay to a collateral source and the cost to Jarrells of collateral benefits received. Jarrells may not recover more than once for any item of loss sustained.

(App.22). The jury returned a verdict in favor of Jarrells and determined damages in the amount of $925,000.00. The jury assessed the comparative fault of the parties as follows: Jarrells, 15% at fault; LeMaster, 30% at fault; R.D.J., 55% at fault; and Delgadillo, 0% at fault. Accordingly, the jury awarded Jarrells a judgment of $508,750.00 ($925,000.00 × 0.55) against R.D.J. On September 23, 2005, the trial court entered a release and satisfaction of judgment against R.D.J. in the amount of $508,750.00.

On September 7, 2006, counsel for Jarrells provided Travelers with a copy of the jury's verdict and judgment against R.D.J. Counsel also informed Travelers that Travelers was not entitled to receive any of the judgment proceeds because the jury had already taken into consideration Travelers' payment of worker's compensation and had deducted that amount from its final award of damages to Jarrells. On November 8, 2006, Travelers demanded *pro rata* reimbursement from Jarrells of $22,495.75 [1] for the worker's compensation paid on behalf of Jarrells pursuant to Indiana Code section 22–3–2–13.

On March 26, 2007, Travelers filed a motion to intervene and to set aside the satisfaction of judgment. The trial court permitted Travelers to intervene and conducted a hearing on the motion on May 23, 2007, and subsequently, denied Travelers' motion to set aside the satisfaction of the judgment. On January 7, 2008, Travelers filed a motion for summary judgment, wherein it sought an order requiring Jarrells to repay a portion of the worker's compensation lien. On May 5, 2008, the trial court conducted a hearing on Travelers' motion for summary judgment. In its order of June 26, 2008, the trial court denied Travelers' motion for summary judgment, noting, in pertinent part, the following:

4. * * * By introducing evidence at trial that he had received worker's compensation benefits from Travelers, and by requesting and receiving the final instruction on collateral-source payments that was specifically approved in *Pendleton v. Aguilar,* 827 N.E.2d 614, 621 (Ind.Ct.App.2005), *trans. denied,* Jarrells ensured that the jury knew he had received collateral-source payments and that, in the words of the relevant final instruction, he 'may not recover more than once for any item of loss sustained.' In *Pendleton,* the Court of Appeals reversed a trial court's order that granted a defendant a set-off for worker's compensation payment after the jury received evidence of such payments and heard precisely the same final instruction that Jarrells's jury heard in this case. According to *Pendleton,* the jury in such circumstances must be deemed to have allowed for a reduction of such worker's compensation payments

---

1. According to Travelers, this sum represents Jarrells' purported lien obligation after Travelers, pursuant to Indiana Code section 22–3–2–13. Travelers arrived at this figure after deducting its *pro rata* share of the costs, expenses, and attorney's fees incurred in pursuit of the third party claim.

in its verdict. Granting a separate set-off, after trial, thus would constitute a double set-off, and 'a double set-off is not allowed under the Indiana Collateral Source Statute.' 827 N.E.2d at 621.

Jarrells's jury very well could have been confused when it deliberated on the specific amount of his award. In closing argument at trial, Jarrells's counsel asked the jury to award Jarrells $2,000,000.00, of which $832,000.00 would be compensation for lost wages ($41,600/year × 20 years) ... with the remainder compensating Jarrells for 'the difference between Jerry the provider, the father, and the Jerry, the man you see today.' The jury's raw verdict of $925,000.00, which is $93,000.00 more than the amount Jarrells requested for lost wages, thus can be seen as granting his entire request for lost wages but rejecting his general claim for pain and suffering—while still awarding an additional amount sufficient to permit Jarrells to repay Travelers $66,135.67 for worker's compensation benefits. Such an interpretation of the verdict is plausible also because the final instruction on collateral-source payments does not explicitly and unmistakably state that any award will be deemed to include a set-off for worker's compensation payments, such that Jarrells need not make a separate repayment of that benefit to Travelers from his award.

This interpretive exercise, however, is precisely the kind of second-guessing of the jury in which reviewing courts in Indiana must not engage. *See Pendleton*, 827 N.E.2d at 621. Thus, even though there are facially plausible reasons for such interpretations of the record, this Court is constrained by *Pendleton* to reject Travelers' request for a set-off from the jury's verdict. Travelers' request for summary judgment therefore should be denied.

(App.18–19) (footnote omitted). Pursuant to Indiana Code section 22–3–2–13, Travelers claims that it was entitled to a statutory lien and/or reimbursement for the *pro rata* value of worker's compensation payments made on behalf of Jarrells. Travelers now appeals.

Additional facts will be provided as necessary.

## DECISION

Travelers argues that the trial court erred in denying its motion for summary judgment because the statutory lien entitled it to reimbursement of worker's compensation payments made on behalf of Jarrells. We agree.

Our standard of review for a trial court's grant of a motion for summary judgment is well settled.

[W]e must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to a judgment as a matter of law. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's

decision to ensure that the nonmovant was not improperly denied his or her day in court.

*City of Mishawaka v. Kvale,* 810 N.E.2d 1129, 1132–33 (Ind.Ct.App.2004) (internal citations omitted).

At issue here is whether Travelers has a right to a worker's compensation lien. In *Spangler, Jennings & Dougherty P.C. v. Indiana Ins. Co.,* 729 N.E.2d 117, 120 (Ind.2000), our supreme court undertook a comprehensive discussion of Indiana's worker's compensation system, and stated, in pertinent part, the following:

> Under Indiana's worker's compensation system, employers must provide limited compensation to workers whose injuries arise out of and in the course of [their] employment, regardless of fault. In return ... the employer is given immunity from civil litigation with his employee. The scheme is ... social legislation designed to aid workers and their dependents and 'shift the economic burden for employment related injuries from the employee to the employer and consumers of its products [and services]. *Id.* * * * In addition to shifting the cost of injuries from worker to employer to achieve social policy goals, the Worker's Compensation Act also provides a way to seek compensation from third-parties who caused injuries. *Id.* The concept *underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer.*

* * *

In worker's compensation third-party actions, as in other tort settings, the comparative fault of the injured employee-plaintiff is factored into the final judgment or settlement. And, while the employee is generally required to repay the worker's compensation carrier for benefits and expenses paid while the employee pursued the third-party action, the amount of that reimbursement is likewise reduced by the amount of the employee's comparative fault.

* * *

The worker's compensation provision governing claims against third persons, Ind.Code § 22–3–2–13, provides a plaintiff the opportunity to choose between worker's compensation and third-party judgments in some situations, so that he might maximize the recovery. If the final judgment in a suit brought by an injured employee is less than the amount of the worker's compensation benefits and medical expenses, the employee can choose to accept the judgment and reimburse the worker's compensation payor, or to assign all rights to the judgment to the worker's compensation payor, and continue to accept the benefits as prescribed by the Board. Ind.Code Ann. § 22–3–2–13.

> *If through settlement or litigation an employee obtains an amount that is more than the worker's compensation benefits, then the employee must reimburse the worker's compensation payor and keep the remainder of the judgment or settlement, thereby relinquishing all right to the compensation benefits.*

*Spangler,* 729 N.E.2d at 120 (internal citations and quotations omitted) (emphasis added).

■ Indiana Code section 22–3–2–13 provides, in pertinent part, the following:

> If the injured employee or his dependents shall agree to receive compensation from the employer or the employer's compensation insurance carrier or to accept from the employer or the employer's compensation insurance carrier, by loan or otherwise, any payment on

account of the compensation, or institute proceedings to recover the same, the employer or the employer's compensation insurance carrier shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated from the third party.

I.C. § 22–3–2–13; *Tack's Steel Corp. v. ARC Const. Co., Inc.*, 821 N.E.2d 883, 890 (Ind.Ct.App.2005). "[T]he primary policy reason for allowing worker's compensation liens [is] to prevent double recovery." *Id.* (citing *Waldridge v. Futurex Indus., Inc.*, 714 N.E.2d 783, 786 (Ind.Ct.App.1999)).

The admissibility of evidence of worker's compensation payments made on behalf of an injured party is governed by Indiana's collateral source statute. At common law, the collateral source rule "prohibited tortfeasors from introducing evidence of compensation received by plaintiffs from collateral sources, i.e., sources other than the defendant, to reduce damage awards." *Shirley v. Russell*, 663 N.E.2d 532, 534 (Ind.1996). "As a result, there could be no abatement of damages when partial compensation was received for an injury from a collateral source independent of the one responsible for the loss, and thus, tortfeasors were held fully accountable for the consequences of their conduct." *Pendleton v. Aguilar*, 827 N.E.2d 614, 620 (Ind. Ct.App.2005).

■ In 1986, however, the Indiana Legislature enacted the collateral source statute found in Indiana Code section 34–44–1–2. The stated aims of Indiana's collateral source statute are to determine the actual amount of the prevailing party's pecuniary loss, and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or a wrongful death action. Specifically, Indiana Code section 34–44–1–2 provides:

In a personal injury or wrongful death action, the court shall allow the admission into evidence of:

(1) proof of collateral source payments other than:

(A) payments of life insurance or other death benefits;

(B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or

(C) payments made by:

(i) the state or the United States; or

(ii) any agency, instrumentality, or subdivision of the state or the United States;

that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought.

I.C. § 34–44–1–2.

■ Travelers asserts that under the facts and circumstances of this case and pursuant to Indiana Code section 22–3–2–13, it is entitled to a statutory lien and/or *pro rata* reimbursement for the worker's compensation payments that it had paid on behalf of Jarrells. Thus, Travelers argues, the trial court erred in denying its motion for summary judgment. Jarrells counters by citing to *Pendleton v. Aguilar*, 827 N.E.2d 614 (Ind.Ct.App.2005), in support of its contention that the jury had already deducted the amount of the worker's compensation payments from its award of damages to Jarrells, and therefore, granting Travelers' motion for a set-off would result in a double set-off against Jarrells and a windfall to Travelers.

We have reviewed the *Pendleton* case, which involved a situation in which a tortfeasor sought a set-off of the worker's compensation payments paid from the Illinois Guaranty Fund, and thereby attempted to impermissibly benefit from an insurer's payment of worker's compensation on behalf of the injured worker. In *Pendle-*

*ton,* we concluded that "[a]pplying the legislature's intent and clear language of the statute logically, ... the statute never intended a tortfeasor to be relieved of his responsibility for damages beyond the statutory provisions in this case." *Id.* at 621.

Here, on the other hand, we believe that the instant case is distinguishable from *Pendleton* in that it involves an insurer, who pursuant to its contract of insurance and Indiana's statutory lien, seeks *pro rata* reimbursement of the worker's compensation payments made on behalf of the injured worker, after the worker recovered a judgment for damages against a third party who was found liable for his injuries.

It is well-settled that where, as here, a statute is clear and unambiguous, "we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." *Marion County v. State,* 888 N.E.2d 292, 303 (Ind.Ct.App. 2008) (quoting *Poehlman v. Feferman,* 717 N.E.2d 578, 581 (Ind.1999)). By its language in Indiana Code section 22–3–2–13, the Indiana Legislature expressed a clear intent to create a statutory lien in and for the benefit of an employer's compensation insurance carrier who has made worker's compensation payments on behalf of an injured worker, where the injured worker has recovered a judgment against a third party who has been found liable for the worker's injuries. The statute provides, in relevant part, as follows:

> [I.C. § ] 22–3–2–13. **Liability of third person—Subrogation of employer—Lien on award to employee—Notice to employer if employee sues—Settlement....**
>
> Whenever an injury ... for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, the injured employee ... may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article. In that case, however, if the action against the other person is brought by the injured employee ... and judgment is obtained and paid, and accepted or settlement is made with the other person, either with or without suit, then from the amount received by the employee ... there shall be paid to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of the reasonable and necessary costs and expenses of asserting the third party claim, the amount of compensation paid to the employee ..., plus the medical, surgical, hospital and nurses' services and supplies ... paid by the employer or the employer's compensation insurance carrier....

\* \* \*

> If the injured employee ... shall agree to receive compensation from the employer or the employer's compensation insurance carrier or to accept from the employer or the employer's compensation insurance carrier, by loan or otherwise, any payment on account of the compensation, or institute proceedings to recover the same, the employer or the employer's compensation insurance carrier shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated from the third party.

I.C. § 22–3–2–13.

In the instant case, without dispute, Jarrells received approximately \$67,000.00 in

worker's compensation payments that were paid by Travelers. Jarrells later filed an action for damages against R.D.J. During the course of the trial, the parties presented evidence to the jury that Jarrells had received worker's compensation payments from Travelers; that said payments were collateral source payments; and, that the jury may consider any amount of the collateral source payments and costs that Jarrells may have to repay in arriving at damages but, that Jarrells could not recover more than once for any item of loss sustained. (App.22). The jury returned a verdict in favor of Jarrells for damages and a judgment for $508,750.00 against R.D.J. (App.23).

■ On appeal, we presume that the jury followed the trial court's instructions and applied the law contained within the instruction to the evidence before it. *Tipmont Rural Elec. Membership Corp. v. Fischer,* 697 N.E.2d 83, 90 (Ind.Ct.App. 1998). Thus, based upon the foregoing, we conclude that Travelers is entitled to a statutory lien and/or reimbursement from the judgment for the worker's compensation it paid on Jarrells' behalf, "subject to [ ] paying its pro-rata share of the expenses of the reasonable and necessary costs and expenses of asserting the third party claim." I.C. § 22–3–2–12. Accordingly, we reverse the trial court's grant of summary judgment in favor of Jarrells and remand with instructions to enter judgment for Travelers and to determine the value of Travelers' lien and its *pro rata* share for purposes of reimbursement.

Reversed and remanded.

VAIDIK, J., concurs in result with separate opinion.

RILEY, J., dissents with separate opinion.

VAIDIK, Judge, concurring in result.

I agree with the result of the majority opinion, but I respectfully disagree in part with the path taken to get there.

Initially, I agree with the majority opinion that, pursuant to Indiana Code § 22–3–2–13, once an employee receives an award from a third-party tortfeasor that is greater than the worker's compensation benefits received by the employee, a statutory lien is created for the benefit of the employer or the employer's insurance carrier. The statutory lien shall be in the amount of the compensation paid by the employer or insurance carrier to the employee minus the pro rata share of the costs of asserting the third-party claim. Since Jarrells received worker's compensation benefits from his employer's insurance carrier, under the plain language of the statute the insurance carrier has a statutory lien on the award Jarrells received. Thus, from the $508,750 judgment Jarrells received against the defendant R.D.J. Custom Homes, Inc., Travelers Indemnity is entitled to $22,495.75. Contrary to Jarrells' argument, *Walkup v. Wabash National Corp.,* 702 N.E.2d 713 (Ind.1998), does not apply because there is no evidence that the policy under which Jarrells received the benefits explicitly stated that they were not worker's compensation benefits. *See id.* at 715–16 (concluding that the statutory lien does not apply to insurance benefits received by the plaintiff employee when the insurance policy specifically excludes payment for worker's compensation benefits).

I part ways with the lead opinion on its treatment of *Pendleton v. Aguilar,* 827 N.E.2d 614, 621 (Ind.Ct.App.2005), *reh'g denied, trans. denied.* While I agree that *Pendleton* is distinguishable from this case, I do not believe it is distinguishable for the reasoning stated by my colleague. Rather, I find *Pendleton* to be distinguishable because in that case,

the plaintiff employee, Pendleton, who was a Florida resident, received worker's compensation benefits from the Florida Worker's Compensation Insurance Guaranty Fund ("Florida Fund") rather than worker's compensation benefits pursuant to Indiana law. The opinion in *Pendleton* does not indicate that Timely Transport,[2] Pendleton's employer, is an Indiana entity such that Indiana's worker's compensation law would apply. *See Elkhart Sawmill Co. v. Skinner*, 111 Ind.App. 695, 42 N.E.2d 412, 415 (1942) ("It will be observed from these authorities that, generally speaking, the Workmen's Compensation Act of Indiana applies only to Indiana employers ... who contract for services to be performed, at least in part, in Indiana.") (citation omitted). There is nothing in *Pendleton* otherwise indicating that Pendleton was required, pursuant to some other law, to repay the Florida Fund for the benefits he received. As a result, *Pendleton* neither discusses statutory liens nor expressly prescribes that an employee who receives worker's compensation benefits can escape paying the statutory lien by introducing a collateral source evidence jury instruction, as Jarrells did, at the third-party trial.

Further, the attorneys for both the plaintiff and defendant in *Pendleton* urged

the jury to take the amount of worker's compensation benefits received into account and not to duplicate the payments. *Pendleton*, 827 N.E.2d at 621. There is no indication in *Pendleton* that Pendleton was required to repay the worker's compensation benefits he received or that the jury was informed he was required to repay. Here, however, Jarrells testified in the underlying third-party trial that he knew that if he recovered in the suit he would "have to pay some of th[e] worker's compensation liens back." Partial Tr. of Jerry Jarrells Testimony p. 5–6. Jarrells himself introduced at trial an exhibit consisting of a letter to his attorney from Travelers Indemnity Company wherein an employee of Travelers informed his attorney that the insurance company has a worker's compensation lien[3] comprised of indemnity and medical payments. Appellant's App. p. 21. As a result, the jury in Jarrells' case was informed that Jarrells was required to repay some amount to the insurance company for the worker's compensation benefits he received.[4]

Turning to the instruction Jarrells tendered,[5] Appellant's App. p. 22, I conclude that the instruction informs the jury that it must consider payments for worker's compensation and that, in determining the

**2.** The opinion in *Pendleton* does not reveal Timely Transport's location.

**3.** "Lien" is defined as "a right to keep possession of property belonging to another person until a debt owed by that person is discharged." The New Oxford Dictionary 985 (2001). The use of the word "lien" would indicate to a reasonable jury that there is an outstanding debt that is to be repaid.

**4.** Jarrells argues in his brief that Travelers has failed to designate in its Motion for Summary Judgment any evidence or trial testimony showing the amount of the lien and that Jarrells was required to repay the amount he received. However, as the dissent notes, it

appears as though Jarrells' counsel attempted to designate the entire record of the case in opposition to summary judgment. Appellant's App. p. 86. Jarrells cannot now complain that we consider materials outside Travelers' designation.

**5.** I note that the instruction is also very similar to the collateral source evidence pattern instruction. *See* Ind. Pattern Jury Instructions (Civil) 11.07 (2d ed.2007). The pattern instruction does not include the final line of the instruction at issue here and in *Pendleton*: "[Plaintiff] may not recover more than once for any item of loss sustained." *Id.; Pendleton*, 827 N.E.2d at 621; Appellant's App. p. 22.

amount received by Jarrells from collateral sources, the jury may consider any amount Jarrells is required to repay to a collateral source. The instruction further states, "Jarrells may not recover more than once for any item of loss sustained." Here, evidence was presented to the jury that Jarrells had received worker's compensation benefits and that he was required to repay them, and a reasonable jury could conclude that the duty to repay prevents Jarrells from recovering more than once for the worker's compensation benefits he has already received. I cannot say that a reasonable jury, when considering the evidence of the lien and the collateral source evidence jury instruction, would disregard Jarrells' obligation to repay the lien by subtracting out the worker's compensation benefits. "On appeal, we will presume the jury followed the law contained within the trial court's instruction and applied that law to the evidence before it." *Tipmont Rural Elec. Membership Corp. v. Fischer,* 697 N.E.2d 83, 90 (Ind.Ct.App.1998), *reh'g denied, aff'd,* 716 N.E.2d 357 (Ind.1999). As a result of these differences, *Pendleton* does not supercede or excuse the statutory lien obligation.

As for the view expressed by the dissent, it cannot be correct that Jarrells, who tendered the collateral source evidence jury instruction given by the trial court, can eradicate as a matter of law through his tendered jury instruction his statutory obligation under Indiana Code § 22–3–2–13 to repay his employer's insurance carrier for the worker's compensation benefits he received. Such an interpretation of *Pendleton* or the jury instruction at issue renders Indiana Code § 22–3–2–13 toothless, and courts must strive to give effect to all provisions of a statute.

For the foregoing reasons, I respectfully disagree with part of the lead opinion's rationale in this case. However, I agree with the outcome. I therefore concur in result.

Judge, RILEY, dissenting with separate opinion.

I respectfully dissent from the majority's decision to reverse and remand the trial court's grant of summary judgment in favor of Jarrells.[6] By reversing, the majority opines that Travelers is entitled to a statutory lien and/or reimbursement from the judgment in the amount of worker's compensation paid to Jarrells, subject to the requirements of Indiana Code section

---

6. We strongly encourage counsel for both parties to familiarize themselves with the rules regarding designating evidence in summary judgment proceedings. As our review of a trial court's ruling on summary judgment is limited to the evidence designated by the parties to the trial court, it is incumbent upon the parties to designate *all* materials which they reference in support of their motion or reply for summary judgment. Here, only Travelers submitted a separate Designation, listing all documents relied upon in formulating its argument. Jarrells never submitted a separate Designation but instead, in its Memorandum in Reply, included references to certain exhibits which are not clearly identified in the Appendix. We strongly advise counsel to familiarize themselves with our supreme court's opinion in *Filip v. Block,* 879 N.E.2d 1076, 1081 (Ind.2008) ("[T]he entire designation must be in a single place, whether as a separate document or appendix or as a part of a motion or other filing").

Furthermore, it appears as if Jarrells' counsel attempted to designate the trial court's "records of all proceedings in this case from the Complaint through and including Intervener's Motion for Summary Judgment and Plaintiff's response there to" by filing a "Judicial Notice" with the trial court. (Appellant's App. p. 86). Again, this is not a proper designation for purposes of summary judgment proceedings. *See id.* Because these documents were not properly designated, they cannot be relied upon by the trial court or the appellate court in its review of the summary judgment proceedings.

22–3–2–12. As recognized by the majority, our supreme court provided a detailed analysis of Indiana's worker's compensation system in *Spangler, Jennings & Dougherty P.C. v. Indiana Ins. Co.*, 729 N.E.2d 117, 120 (Ind.2000). And while the majority's opinion is concerned about the procedures of the system, it loses sight of the worker's compensation's purpose.

The General Assembly created a comprehensive statutory scheme with provisions, including the possibility of a lien by worker's compensation carriers, to ensure the appropriate recovery by the appropriate parties. *Walkup v. Wabash Nat'l Corp.*, 702 N.E.2d 713, 715 (Ind.1998). As such, the worker's compensation scheme reflects a compromise struck by employers and injured workers. An employer is obligated to provide limited compensation to workers whose injuries and illnesses arise out of and in the course of their employment. *Walker v. State of Indiana, Muscatatuck State Development Center*, 694 N.E.2d 258, 268 (Ind.1998). It is designed to "shift the economic burden for employment related injuries from the employee to the employer and the consumers of its products." *Collins v. Day*, 604 N.E.2d 647, 648 (Ind.Ct.App.1992), *aff'd on other grounds*, 644 N.E.2d 72 (Ind.1994). More specifically, the purpose of the worker's compensation lien is to prevent the injured employee from recovering twice at the expense of the employer. *Walkup*, 702 N.E.2d at 713. *See also* Larson & Larson, Larson's Worker's Compensation Law § 71.20 (1992) (a lien on a recovery from a third party is designed to put the employer back in a neutral position by repayment of medical costs it incurred, to make the injured employee whole and to place the cost of the injury on the wrongdoer). As a result, double recovery is impossible.

As noted by the majority, the admissibility at trial of worker's compensation payments made on behalf of an injured party is governed by Indiana's collateral source statute, Ind.Code § 34–44–1–1 *et seq.* Just like the worker's compensation statute, the purpose of the collateral source rule statute is to determine the actual amount of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or a wrongful death action. Substantively, the statute envisions that victims may not recover more than once for each item of loss sustained. I.C. § 34–44–1–1(2).

Here, at trial, Jarrells provided the jury with the exact amount of worker's compensation benefits paid out by Travelers and informed the jury of Travelers' lien for that amount. After introducing evidence of this collateral source payment, the trial court specifically gave the following limiting instruction to the jury:

> If you find that JERRY JARRELLS is entitled to recover, you shall consider evidence of payment made by some collateral source to compensate JARRELLS for damages resulting from the accident in question. In determining the amount of JARRELL's damages, you must consider the following type of collateral source payments:
>
> Payments for worker's compensation. In determining the amount received by JARRELLS from collateral sources, you may consider any amount. JARRELS is required to repay a collateral source and the cost to JARRELLS of collateral benefits received. JARRELLS may not recover more than once for any item of loss sustained.

(Appellant's App. pp. 77 & 91).

The identical limiting instruction was given in *Pendleton v. Aguilar*, 827 N.E.2d 614, 621 (Ind.Ct.App.2005), *reh'g denied, trans. denied*, where Pendleton had re-

ceived worker's compensation benefits after a personal injury. *Id.* at 618. During the trial, the jury heard evidence of collateral source payments and at the close of the evidence, the jury returned a damage award in favor of Pendleton. *Id.* at 617. However, upon Aguilar's motion for setoff, the trial court reduced Pendleton's jury verdict by the amount of the worker's compensation lien. *Id.* at 619. On appeal, we reversed the trial court. *Id.* at 626. We held that it was improper to further reduce Pendleton's recovery because the jury had been instructed to consider the worker's compensation benefits as a collateral source and not to award double recovery. *Id.* at 620–21. We stated that

> It is well established that on appeal, we will presume the jury followed the law contained within the trial court's instruction and applied that law to the evidence before it. Thus, we refuse to attempt to interpret the thought process of the jury in arriving at its verdict. Accordingly, we must presume the jury followed the limited instruction on collateral source payments and took Pendleton's worker's compensation benefits into account in arriving at its damage award.

*Id.* at 621 (internal citations omitted). In reversing the trial court, we reasoned that

> By subtracting the collateral source payments again from the jury's verdict, the trial court, in effect, ordered a double set-off. Mindful of the legislature's intent to deny a claimant from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or a wrongful death action, we find that under the circumstances of this case, the trial court, rather than awarding a double windfall to Pendleton, allowed a double credit or set-off to Aguilar.

*Id.* (internal citations omitted).

I clearly part ways with the majority's treatment of our *Pendleton* decision.

Whereas the majority attempts to distinguish the case on the basis that "it involves an insurer, who pursuant to its contract of insurance and Indiana's statutory lien, seeks *pro rata* reimbursement of the worker's compensation payments made on behalf of the injured work[,]" I believe *Pendleton* to be on point to the situation before us. (Slip op. p. 10). It is immaterial whether a full reimbursement or merely a pro rated reimbursement is sought, either way, a reimbursement would represent a windfall or double recovery which is expressly prohibited under Indiana's collateral source statute. *See* I.C. § 34–44–1–1.

The jury was instructed on the amount of worker's compensation benefits already awarded to Jarrells and, as we will presume the jury followed the jury instruction, took this amount into account when calculating its damage award. Because the jury was instructed that Jarrells could not recover more than once for any item of loss sustained, it adjusted its damage award downwards, as was done in *Pendleton.*

By enforcing the lien, the majority is in effect imposing a double set-off on Jarrells. First, the jury by following the jury instruction, already properly considered the worker's compensation benefits in its jury verdict and reduced its award accordingly. Thus, by again reducing the jury award with the worker's compensation benefits by enforcing the lien, Jarrells is subject to a double set-off, prohibited under Indiana's collateral source statute and *Pendleton.*

Furthermore, this dissent is in line with the purpose of both the worker's compensation statute and the collateral source statute. Both statutes focus on preventing a victim from recovering twice for his injuries. *See* I.C. § 34–44–1–1(2); *Walkup,*

702 N.E.2d at 713. They are intended to make the injured party whole while placing the cost on the wrongdoer. Here, the majority fails to make Jarrells whole.

I would affirm the trial court.