ATTORNEY FOR APPELLANT
Robert S. O'Dell
Carmel, Indiana

ATTORNEYS FOR APPELLEE
W. F. Conour
Jeffrey A. Hammond
Timothy F. Devereux
Indianapolis, Indiana

In the
Indiana Supreme Court

FILED

May 27 2010, 1:36 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 29S02-0908-CV-378

THE TRAVELERS INDEMNITY
COMPANY OF AMERICA,                                    *Appellant (Intervenor below),*

v.

JERRY JARRELLS,                                               *Appellee (Plaintiff below).*

Appeal from the Hamilton County Superior Court. No. 29D03-0212-CT-943
The Honorable William J. Hughes, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-0807-CV-669

**May 27, 2010**

**Boehm, Justice.**

The Worker's Compensation Act provides that if an employee has received worker's compensation benefits and then recovers damages from a third party for the same injury, the employee is to reimburse the amount of benefits. The trial court held that under the instructions in this case the jury had already deducted the amount of worker's compensation payments from its award and there was therefore no recovery for injuries previously covered by worker's compensation. The Court of Appeals reversed, taking the view that the jury's award included amounts to be repaid. We agree that both interpretations are plausible but hold that the trial court's reading in this case should be affirmed. The employee is therefore not required to repay his employer's worker's compensation carrier after receiving a judgment against a third party

tortfeasor. However, in future trials where the trier of fact finds that the evidence establishes that the plaintiff has received payment for some of the damages from other sources, the award should include those damages, but only to the extent that the evidence establishes an obligation to repay.

## Facts and Procedural History

Jerry Jarrells was seriously injured in September 2002 when an unbraced, ten-foot concrete block wall fell on him at a construction site. At the time of the injury, Jarrells was an employee of LeMaster Steel Erectors, Inc., a subcontractor of R.D.J. Custom Homes, Inc., the general contractor. Travelers Indemnity Company of America, LeMaster's worker's compensation insurer, paid worker's compensation benefits for the accident consisting of disability benefits of $21,025.91 and medical payments of $45,109.76, or a total of $66,135.67.

Jarrells sued R.D.J. and Armando Delgadillo, another subcontractor, for the same injuries. He notified Travelers of the lawsuit, and Travelers responded with a notification of its statutory lien in the amount of $66,135.67, but did not intervene in the personal injury suit prior to trial. At the jury trial, Jarrells presented evidence of the worker's compensation payments and testified that he was aware that if he recovered in the lawsuit, he might have to reimburse Travelers for those payments.

The jury was instructed as explained below and returned a verdict in favor of Jarrells, valuing his total damages at $925,000. The jury assigned 55% of the fault to R.D.J., 0% to Delgadillo, 30% to LeMaster, a non-party, and 15% to Jarrells, producing an award of 55% of $925,000, or $508,750. After Jarrells notified Travelers of the judgment, Travelers demanded reimbursement from Jarrells in the amount of $22,495.75, which it calculated by reducing its $66,135.67 expenditure to account for comparative fault and a share of Jarrells' attorney's fee. Jarrells responded that Travelers was not entitled to any of the judgment proceeds because the jury "already reduced the award by the amount of the work comp benefits and the award should not be reduced further after judgment."

Travelers then moved to intervene in the trial court and reopen the case. The trial court permitted Travelers to intervene, and after some procedural skirmishing not relevant here, Travelers moved for summary judgment, seeking a declaration that it was entitled to a statutory

2

lien on the proceeds of Jarrells' judgment against R.D.J. The trial court denied that motion and granted summary judgment to Jarrells rejecting Travelers' claimed lien. The trial court ruled that Travelers' requested relief would impose a double setoff on the recovery because the jury had already deducted the worker's compensation benefits from the gross award. For this proposition, the court cited Pendleton v. Aguilar, 827 N.E.2d 614, 621 (Ind. Ct. App. 2005), trans. denied.

Travelers appealed, and in three separate opinions the Court of Appeals reversed with instructions to enter judgment for Travelers and determine the value of its lien. Travelers Indem. Co. of Am. v. Jarrells, 906 N.E.2d 912, 919 (Ind. Ct. App. 2009). We granted transfer.

### Standard of Review

The trial court denied Travelers' motion for summary judgment and, on its own motion, granted summary judgment for Jarrells. When reviewing summary judgment orders, we use the same standard of review used by the trial court: summary judgment is appropriate only when the evidence shows no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); Kovach v. Caligor Midwest, 913 N.E.2d 193, 197 (Ind. 2009). "We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party." Kovach, 913 N.E.2d at 197.

### I. Worker's Compensation Payments and the Collateral Source Statute

The common law collateral source rule prohibited presentation of evidence that a plaintiff in a personal injury action had received payments from sources other than the defendant. See, e.g., Pendleton, 827 N.E.2d at 620. In 1986 Indiana enacted the Collateral Source Statute, Indiana Code § 34-44-1-1 et seq. (2004). The stated purposes of the statute are to enable an accurate assessment of the "prevailing party's pecuniary loss" and to provide "that a prevailing party not recover more than once from all applicable sources for each item of loss sustained." I.C. § 34-44-1-1. The statute specifically addresses worker's compensation benefits, and provides that presentation of evidence of worker's compensation benefits is permitted to establish "proof of the amount of money that the plaintiff is required to repay." I.C. § 34-44-1-2(2). The statute expressly allows proof of payments from some collateral sources, including worker's compensation, and also directs the trier of fact to "consider" the payments allowed to

3

be admitted into evidence.  I.C. § 34-44-1-3.  In these respects the statute departs from its treatment of other collateral sources—for example any plaintiff's insurance that might cover some element of damages—that are not presented to the trier of fact.  The Collateral Source Statute's treatment of worker's compensation fits with the Worker's Compensation Act's provision for repayment of benefits to the employer or its insurance carrier in the event that an injured employee recovers from a third party for the employee's injuries that also qualify for worker's compensation.  See generally I.C. § 22-3-2-13.

If the jury is to consider evidence of collateral source payments such as worker's compensation that the plaintiff is required to repay, the only plausible interpretation of these provisions is that the jury should include the amount of any collateral source payments that the plaintiff is required to repay in its award to the plaintiff.  If, however, there is no evidence of an obligation to repay, then the jury should not include the amount of collateral source payments in its award.  The defendant, therefore, is benefited by evidence of the collateral source payments, and the plaintiff gets the benefit of proof of obligation to repay.

## II.  The Jury's Award to Jarrells

In this case, the trial court gave the pattern jury instruction with the addition of the last sentence, which is not in issue here (the "Collateral Source Instruction"):

> If you find that Jerry Jarrells is entitled to recover, you shall consider evidence of payment made by some collateral source to compensate Jarrells for damages resulting from the accident in question.  In determining the amount of Jarrells' damages, you must consider the following type of collateral source payments:
>
> Payments for worker's compensation.
>
> In determining the amount received by Jarrells from collateral sources, you may consider any amount Jarrells is required to repay to a collateral source and the cost to Jarrells of collateral benefits received.  Jarrells may not recover more than once for any item of loss sustained.

4

See Indiana Pattern Jury Instructions—Civil No. 11.07 (2d ed. 2007). This instruction was tendered by Jarrells and was accepted by the court without objection relevant to any issue before us.[1]

The parties dispute whether, under this instruction, the jury deducted the amount of worker's compensation benefits that Jarrells had received from the total damage in arriving at its $925,000 damage figure, or, in the alternative, fixed the damages on the assumption that Jarrells would repay Travelers out of the proceeds of the judgment. Because we agree that both parties present plausible interpretations, we find this instruction confusing and hold that it should not be used in future trials. If Travelers had participated in the trial and objected to the instruction, this ambiguity would warrant a new trial. T.R. 51(C); see Penn Harris Madison School Corp. v. Howard, 861 N.E.2d 1190, 1195 (Ind. 2007). But there was no objection to the instruction, and Travelers, as a post-trial intervenor, takes the trial as it finds it. T.R. 24; State Farm Mut. Auto. Ins. Co. v. Hughes, 808 N.E.2d 112, 116 (Ind. Ct. App. 2004); Panos v. Perchez, 546 N.E.2d 1253, 1255 (Ind. Ct. App. 1989) ("[T]he intervention of a party after judgment binds the intervenor to all prior orders and judgments in the case.").

The trial court cited Pendleton, 827 N.E.2d 614, in holding that the jury had deducted the amount of worker's compensation benefits that Jarrells had received in fixing damages at $925,000. Pendleton was a truck driver injured in a collision with a truck driven by Aguilar. Pendleton received worker's compensation benefits for his injuries and subsequently brought a personal injury action against Aguilar. The jury was given the Collateral Source Instruction and awarded a judgment to Pendleton. Aguilar filed a post-trial motion for setoff, requesting that the trial court reduce the judgment against him in the amount of worker's compensation benefits that Pendleton had received. Pendleton, 827 N.E.2d at 617. The trial court granted the motion, and the Court of Appeals reversed, holding that by granting the motion the trial court had allowed a double set-off against Pendleton. Id. at 621.

Pendleton's worker's compensation was governed by Florida law, and his worker's compensation benefits were paid by a Florida insurance guaranty fund which did not seek

---

[1] Delgadillo objected only on the ground there was no evidence of the cost to Jarrells of any collateral benefits. No other objection was raised.

5

reimbursement for its payments.  Id. at 619.  We agree with Judge Vaidik's view in the Court of Appeals that Pendleton is not controlling here because there was no evidence that Pendleton was required to repay any of the worker's compensation benefits he received.  Travelers, 906 N.E.2d at 920 (Vaidik, J., concurring).  Pendleton therefore does not address how a jury would calculate damages under the instruction if it was presented with this evidence, as occurred in Jarrells' case.[2]

This case turns on how the jury valued Jarrells' injuries at $925,000.  We presume the jury followed the instructions.  See Tipmont Rural Elec. Membership Corp. v. Fischer, 697 N.E.2d 83, 90 (Ind. Ct. App. 1998).  But by directing the jury to "consider" the worker's compensation benefits paid and also to "consider" the obligation to repay, the instruction is less than clear how the jury is to take these payments into consideration.  The jury could have interpreted this instruction in at least two ways.  The trial court concluded that the jury deducted the amount of worker's compensation payments from the amount of Jarrells' damages in order to prevent Jarrells from "recover[ing] more than once for any item of loss sustained."  The Court of Appeals found that the amount of worker's compensation payments should be included in the jury's value of damages to permit Jarrells to fulfill the obligation to repay.  Travelers, 906 N.E.2d at 919.

Travelers urges us to accept the Court of Appeals' interpretation of the judgment.  We concede the possibility that the jury included the amount of worker's compensation payments made to Jarrells in its award based on its assumption that he would have to repay Travelers for those payments.  We think, however, this is less likely.

First, the trial court is in the best position to determine what the jury may have intended. See Murray v. Fairbanks Morse, 610 F.2d 149, 153 (3d Cir. 1979) ("[t]he trial judge is in the best position to evaluate the evidence and assess whether the jury's verdict is rationally based" in determining whether the jury verdict was excessive); Taulbee v. Mullins, 336 S.W.2d 597, 598

---

[2] Jarrells also cites Walkup v. Wabash National Corporation, 702 N.E.2d 713 (Ind. 1998), as support for his position. In Walkup, we declined to enforce a worker's compensation lien in a situation where an employee had received collateral source payments from his employer's uninsured motorist coverage carrier.  The uninsured motorist policy explicitly excluded worker's compensation payments from its coverage.  We held that the lien was unenforceable because the payments from the uninsured motorist policy, by definition, excluded worker's compensation.  Id. at 715.  We do not find Walkup to be persuasive here.

6

(Ky. 1960) ("Having conducted the trial, [the trial judge] was in a better position than [the appellate court] to determine the basis of the jury verdict.").

Second, the jury was informed of the amount of the worker's compensation payments necessary to deduct from its judgment for Jarrells to avoid a double recovery. That amount, $66,135.67, was presented at trial, but as Travelers' calculation of its lien demonstrates, the rules for calculating a post-judgment lien are complex. See I.C. § 22-3-2-13. Here, no evidence was presented to the jury regarding the actual amount that Jarrells would be required to repay to Travelers if Travelers asserted a lien, and there was no instruction as to the rules governing this calculation. The jury therefore could not have determined how much to add to the judgment if it wanted to provide for Jarrells' repayment to Travelers as opposed to "considering" it by eliminating the damages already covered by worker's compensation benefits.

Finally, the stated purpose of the Collateral Source Statute is to prevent double recovery. I.C. § 34-44-1-1. This purpose was emphasized to the jury in the final sentence of the Collateral Source Instruction. It is therefore plausible that the jury followed the instruction by deducting the amount of the worker's compensation payments from its verdict for Jarrells. It also appears the parties assumed that the jury's award would not include amounts already compensated by worker's compensation benefits. In closing argument R.D.J.'s attorney pointed out that Jarrells may be required to repay worker's compensation benefits in an amount he estimated as $68,000.00. It was presumably in the defendant's interest to obtain a lower judgment by deploying the repayment obligation to reduce the award. This argument reflects the assumption that the jury would award the lesser amount after "considering" the worker's compensation benefits.

## Conclusion

The trial court's order denying Travelers' motion for summary judgment and granting summary judgment in favor of Jarrells is affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, J.J., concur.